[Crim. No. 16512. Second Dist., Div. Four. Nov. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN RUIZ, Defendant and Appellant.

994

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Donald B. Marks, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant was convicted in the Municipal Court of the Los Angeles Judicial District of a violation of subdivision (1) of section 314 of the Penal Code (exhibitionism). It appears from the record that the victim was a girl under the age of 14. The municipal court certified defendant to the superior court for proceedings under the Mentally Disordered Sex Offender Act.[1] Two psychiatrists were appointed; they filed

---

[1] As we point out below, some of the proceedings herein took place under the provisions of that act (§§ 5500 to 5522 of the Welf. & Inst. Code) as in force prior to the effective date of chapter 1667 of the Laws of 1967; some took place under the new sections (§§ 6300 to 6330 of that code) as added and substituted by the 1967 statute. Except as otherwise indicated, all statutory references in this opinion are to the

reports stating that he was a mentally disordered sex offender but expressing doubts as to his benefiting from treatment in a state hospital. After a hearing, at which he was present and represented by counsel, the superior court found that he was a probable mentally disordered sex offender and committed him to Atascadero State Hospital for observation and diagnosis. Thereafter, and within the statutory 90-day period, the superintendent made his report to the effect that defendant was a mentally disordered sex offender who would benefit by treatment in a state hospital and recommending that he be committed for an indefinite period pursuant to section 5512 of the Welfare and Institutions Code. On September 24, 1968, the superior court made its order of commitment pursuant to such report and recommendation.

On December 19, 1968, the superintendent reported to the superior court as follows: "This patient has reached maximum hospital benefit. He has had a trial of therapy in this hospital and has not benefited from this period of treatment. He remains a danger to society and should be returned to court for resumption of criminal proceedings.

"I recommend that he be committed to the Department of Mental Hygiene for an indeterminate period . . . ."

On receipt of that report and recommendation, the superior court ordered that defendant be returned to the municipal court for further proceedings in the criminal case in that court. On January 6, 1969, the municipal court made an order recertifying defendant to the superior court for resumption of proceedings there. The mimeographed form used for that order referred to sections 5512 and 5518 of the Welfare and Institutions Code. Those section numbers were crossed out and section numbers 6316 and 6326 were inserted in ink in their place.

The superior court appointed two psychiatrists (the same doctors who had examined defendant previously), and they filed their reports to the effect that defendant was a mentally disordered sex offender who would not benefit by care and treatment in a state hospital. After a hearing at which defendant was present, represented by counsel and at which both doctors testified, the court made an order finding him to be a mentally disordered sex offender and committing him to the Department of Mental Hygiene for an indefinite period.

Defendant has appealed from that order of commitment. We affirm the order.

Welfare and Institutions Code; because the pre-revision section numbers are all in the 5500 series and the new sections are all in the 6300 series, we have not otherwise attempted to show, in every case, whether the reference is to the old or to the new provisions.

On this appeal, defendant's court-appointed counsel urges various alleged procedural irregularities and also argues that the evidence at the final hearing did not support the order of indefinite commitment there made. We find no procedural errors of a nature to affect the validity of the order herein under review and we find sufficient evidence in the record to support the order.

I

By chapter 1667 of the Laws of 1967, the Legislature revised extensively the laws relating to commitments to state hospitals. By the provisions of that act, section 5500 et seq., of the Welfare and Institutions Code were repealed and new sections, numbered 6300 et seq., were enacted in their place. Section 48 of the revised act provided that the substitution of the new sections for the old should take place on the 61st day after the adjournment of the 1968 regular session of the Legislature. That date fell on November 13, 1968. Relying on a footnote in one of the standard sets of annotated codes, to the effect that the revision took effect on July 1, 1969, counsel for defendant argues that the order of the municipal court, made on January 6, 1969, recertifying defendant to the superior court, was erroneous in citing the new section numbers and striking out the old. Clearly, the point is without merit since the new sections were in force on the date in question.[2]

II

■ It is argued that the original certification by the municipal court was fatally defective in that it did not state the "reasons" for the municipal court's finding that defendant was a mentally disordered sex offender, but merely stated that finding in conclusionary terms.[3] The certification was on a printed form, obviously developed for use in a variety of proceedings. The one before us has checked a paragraph reading as follows: "There is

---

[2]Since the revision made no material change in the text of the two sections involved, the certificate would have been valid even if the effective date was later; the statutory references were surplusage.

[3]The portion of section 5501 herein pertinent is as follows: "(a) When a person is convicted of any criminal offense, whether or not a sex offense, the trial judge, on his own motion, or on motion of the prosecuting attorney, or on application by affidavit by or on behalf of the defendant, if it appears to the satisfaction of the court that there is probable cause for believing such a person is a mentally disordered sex offender within the meaning of this chapter, may adjourn the proceeding or suspend the sentence, as the case may be, and may certify the person for hearing and examination by the superior court of the county to determine whether the person is a mentally disordered sex offender within the meaning of this chapter. Conviction upon a charge of violation of Section 290 of the Penal Code by failure to register as required thereby is conviction of a criminal offense within the meaning of this subdivision.

"(b) When a person is convicted of a sex offense involving a child under 14 years of age and it is a misdemeanor, and the person has been previously convicted of a sex

probable cause for believing that defendant is a mentally disordered sex offender within the meaning of § 5500 of the Welfare and Institutions Code in that he is a person who by reason of mental defect, disease, or disorder is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others."

As we have pointed out above, defendant was actually convicted in the trial court of a sex offense "involving" a child under 14 years of age, having previously been convicted of a sex offense. In such a case, certification to the superior court was mandatory under subdivision (b) of section 5501 and, as to a certification under that subdivision, the statutory requirement was that the certificate "state the facts making the certification mandatory." From this, the Attorney General argues that the certificate herein did not require a statement of reasons. But the certificate does not comply with the requirements relative to subdivision (b). It recites merely that defendant had been convicted of a violation of subdivision (1) of section 314 and is silent as to the age of the victim or as to any previous offenses. It follows that the certificate must be judged, on its face, as being one made under subdivision (a) of section 5501.

Judged by the statute applicable to such a certificate, we conclude that the form used was sufficient. It states the ultimate facts—mental defect, disease or disorder, predisposition to sex offenses, dangerousness to others —on which the conclusion that he probably was a mentally disordered sex offender rests. To require anything more would involve stating evidentiary and not ultimate facts. But the purpose of the certification is to give defendant notice of the charge with which he will be faced in the superior court; as with any pleading, it is ultimate and not evidentiary facts that should be alleged. (Cf. *In re Jones* (1968) 260 Cal.App.2d 906, 912 [68 Cal.Rptr. 32].)

### III

■ Counsel argues that the proceedings resulting in the 1969 recertification from the municipal court to the superior court were defective.

---

offense in this or any other state, the court shall adjourn the proceeding or suspend the sentence, as the case may be, and shall certify the person for hearing and examination by the superior court of the county to determine whether the person is a mentally disordered sex offender within the meaning of this chapter.
" . . . . . . . . . . . . . . . . . .
"Certification; statement. When the court certifies the person for hearing and examination by the superior court of the county to determine whether the person is a mentally disordered sex offender, the court shall transmit to the superior court its certification to that effect, accompanied by a statement of the court's reasons for finding that there is probable cause for believing such person is a mentally disordered sex offender within the meaning of this chapter in cases certified under (a) or (d), or a statement of the facts making such certification mandatory under (b) or (c)."

The statute (§ 6326) provides that, after a defendant has been returned by the superintendent of Atascadero with a report and recommendation under subdivision (b) of section 6325,[4] " . . . the committing court shall . . . cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge." The section then provides that: "Such court shall resume the proceedings and after considering all the evidence before it shall impose sentence or make such other disposition of the case as the court may deem necessary and proper; provided, that said court, if satisfied that the person has not recovered from his mental disorder and is still a danger to the health and safety of others, may recertify the person to the superior court of the county."

Counsel would read that provision as requiring the municipal court, prior to recertification, to consider all of the evidence before it at the original criminal trial. We conclude that he has misread the statute—it is only if the criminal court intends to elect the option of imposing a sentence, or of making other disposition of the criminal charge as such, that it must consider the evidence bearing on a defendant's guilt or innocence. The determination to recertify does not turn on the evidence in the criminal case but on the record showing the defendant's then mental condition and character. That record was before the court, in the form of a detailed staff report attached to the superintendent's report and recommendation. The order of recertification purports to be based on section 6326; we must assume, absent anything to the contrary in the record, that the municipal court had read and considered the psychiatric and psychological data sent to it from Atascadero; no more was required.

As the Attorney General points out, the recertification, like the original certification, does no more than to state an issue for the superior court. In that court, the defendant is entitled to a full hearing and it is on the basis of that hearing that he is, or is not, again committed to a state institution.

## IV

■ Counsel next argues that defendant was unconstitutionally denied a jury trial. By statute (§ 6318) a defendant may have a jury trial on the issue of his original indefinite commitment under section 6316 if, but only if, he demands such a proceeding within 10 days after the making of such an order. There is no right to a jury trial in connection with an order of indefinite commitment under section 6326. As we said in *People* v. *Berry* (1968) 257 Cal.App.2d 731, 736-737 [65 Cal.Rptr. 125]: "In fact, once the order for an indefinite commitment to Atascadero has been made,

---

[4] Formerly subdivision (b) of section 5517.

subsequent proceedings under either section 5518 or 5519 [6326 or 6327] have merely the effect of transferring the defendant from one institution to another—a decision which could constitutionally have been made by administrative rather than by judicial proceeding—or they result (to a defendant's advantage) in a reduction in the term of confinement whenever the court elects to impose a criminal sentence for a fixed term in lieu of a commitment to the Department of Mental Hygiene for an indefinite term. In any case, no constitutional right of defendant is violated by a statute which requires only a court and not a jury hearing at this stage."

■ It follows that we are concerned only with the hearing on September 24, 1968. In *People* v. *Fuller* (1964) 226 Cal.App.2d 331, 335 [38 Cal.Rptr. 25], we held that the right to a jury trial following such an order, granted by then section 5512.5 (now § 6318), was purely statutory and not one compelled by the Constitution. Counsel urges that later cases have shaken the validity of that holding and that, by analogy to *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], we should now hold that, since the effect of orders under the Mentally Disordered Sex Offender Act is to impose a potential life confinement, there is a constitutionally protected right to a jury trial.

*Moore* was concerned with a case arising under the Narcotic Rehabilitation Act, and the Supreme Court said (at pp. 681-682): "Whether any particular rule of criminal practice should be applied in a narcotic addict commitment proceeding depends upon consideration of the relationship of the policy underlying the rule to the proceeding."

Applying that test, it concluded that the rules excluding evidence obtained by unlawful search and seizure should be applied in a narcotic case, but that the rule of proof beyond a reasonable doubt need not be applied. In cases arising under the statute before us, courts have held that the basic requirements of due process of law—notice, hearing, process for witnesses and right to counsel—were constitutionally required; but we are cited to no case in which it has been held that, if a hearing meeting the standards of due process is afforded, the Constitution requires any particular type of tribunal. We reject the claim that there is a constitutional right to a jury trial in cases under this statute.

■ Counsel also contends that, assuming that the statute constitutionally permits a waiver of jury trial by a failure to demand one, there can be no valid waiver unless the defendant has specifically been advised of his right to make such a demand.[5] That argument falls with the rejection of the

---

[5]The record shows that defendant was served with a copy of the order of commitment and was advised that he might, within 10 days, " 'demand a hearing in court . . .' " But the notice does not tell him that that hearing might, if he desired, be

contention that the right to jury trial was more than statutory. It is true that, if a constitutional right exists, it must be observed unless waived and that a waiver implies, among other things, a knowledge that the right existed. It is also true that, where a statute expressly directs that a defendant be given notice of rights—either constitutional or statutory—a failure to give such notice is fatal. (*People* v. *Hunter* (1969) 270 Cal.App.2d 683 [76 Cal.Rptr. 101].) But there is neither a constitutional nor a statutory command that a defendant be advised of his rights under section 5512.5. Absent such a command, none need be given.

## V

■ Finally, defendant argues that the evidence at the hearing held on his recertification was insufficient to sustain the order of indefinite commitment. By stipulation, the written reports of the two doctors were received in evidence. Each report stated expressly that defendant had a mental defect, disease or disorder, that he had a predisposition toward the commission of sexual offenses, that such predisposition existed to such a degree as to make him dangerous to the health and safety of others, and that he would not benefit by care and treatment in a state hospital. It is true that, in their oral testimony, the doctors indicated a possibility that a "long time" treatment might succeed in rehabilitating defendant. But the issue at a hearing under section 6326 is not whether or not the person can ever be treated, but whether he will benefit by care and treatment as provided at Atascadero. Section 6327, with its provision for re-examination of the person at six-month intervals, itself implies that the sort of care and treatment available after a 6326 commitment may bring about improvement and eventual release. We see nothing in the doctors' cautious refusal to diagnose an absolute impossibility of improvement that undermines their opinion, as expressed in their formal reports, that defendant was a person properly subject to a section 6326 commitment.

The order is affirmed.

Files, P. J., and Dunn, J., concurred.

---

before a jury. The issue of lack of notice of a right to jury trial is, thus, legitimately raised on this record.