[Civ. No. 15715. Fourth Dist., Div. Two. Aug. 16, 1976.]

WILLIAM M. O'BRIEN, as Director, etc.,
Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JOSEPH C. et al., Real Parties in Interest.

[Civ. No. 15729. Fourth Dist., Div. Two, Aug. 16, 1976.]

In re LONNIE G. on Habeas Corpus.

[Civ. No. 15740. Fourth Dist., Div. Two. Aug. 16, 1976.]

In re JOYCE M. on Habeas Corpus.

[Civ. No. 15786. Fourth Dist., Div. Two. Aug. 16, 1976.]

In re BEVERLY A. on Habeas Corpus.

64

**COUNSEL**

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Ronald V. Thunen, Jr., and Robert S. Henry, Deputy Attorneys General, for Petitioner in No. 15715 and for Respondent in Nos. 15729, 15740 and 15786.

Charles E. Ward, Public Defender, and Littleton M. Gunn, Deputy Public Defender, for Real Parties in Interest and for Petitioners in Nos. 15729, 15740 and 15786.

No appearance for Respondent in No. 15715.

## OPINION

GARDNER, P. J.—These four writ proceedings present a common issue: Whether there is a right to jury trial in a habeas corpus proceeding brought by a person civilly committed as mentally retarded pursuant to Welfare and Institutions Code section 6500 et seq.

In 4 Civil 15715 the Medical Director of Patton State Hospital and the State Department of Health seek a writ of prohibition to prevent the superior court from granting jury trials to five persons involuntarily confined in Patton State Hospital as mentally retarded persons pursuant to Welfare and Institutions Code section 6500 et seq. Each of these five persons instituted habeas corpus proceedings in the superior court seeking release from custody. The question of their right to jury trial was briefed and argued in superior court. The judge granted the motion for jury trial in each case and the instant writ proceeding is in effect an interlocutory appeal from those orders. However, the Attorney General has informed us that four of the proceedings below have now been dismissed following the release of the persons concerned, and therefore as to these proceedings the petition is moot. We treat this declaration as a motion to amend the petition to delete reference to the dismissed proceedings, which we grant.

Numbers 4 Civil 15729, 4 Civil 15740, and 4 Civil 15786, are petitions for writs of habeas corpus by three other persons confined in Patton State Hospital as mentally retarded persons. These petitioners each filed a prior habeas petition in the superior court which was heard without a jury and denied. We granted alternative writs and issued orders to show cause for the limited purpose of determining whether the Superior Court acted within its jurisdiction in denying the petitions without affording the option of jury trial. Two of these three petitioners have now been released from Patton State Hospital and therefore have already received the relief requested. Motions to dismiss their petitions for habeas corpus have been filed by the Attorney General on the ground of mootness. Although petitioners' counsel urges us to apply the public interest exception to the mootness doctrine (see 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 470), there is no need to apply that exception here because the questions raised in the moot petitions are also raised by the remaining petition for habeas corpus and by the amended petition for writ of prohibition. Accordingly, mootness is a sufficient ground for denying the writs of habeas corpus in numbers 4 Civil 15729 and 4 Civil 15740. (See *People* v. *Daniels,* 14 Cal.3d 857, 863 [122 Cal.Rptr. 872, 537 P.2d 1232].)

Resolution of the issue before us requires a brief review of statutory provisions governing involuntary commitment of the mentally retarded and decision of certain preliminary questions concerning their operation.

Prior to July 1, 1971, a person could be committed to a state hospital for an indefinite period upon a finding of mental retardation. (See generally, *Legal Planning for the Mentally Retarded: The California Experience*, 60 Cal.L.Rev. 438.) On and after July 1, 1971, no mentally retarded person may be committed unless it is also shown that he or she is a danger to self or others. (Welf. & Inst. Code, § 6500.1.) Also, beginning January 1, 1976, the effective date of the most recent amendment to Welfare and Institutions Code section 6500.1,[1] any order committing a mentally retarded person expires automatically one year after the order of commitment is made.

I

■ The first question presented is whether commitment orders made prior to January 1, 1976, continue to be effective as indefinite commitments, or whether such orders are subject to expiration.

We are informed by the Attorney General, acting on behalf of the State Department of Health, that the Second District Court of Appeal has concluded, in an unpublished opinion, that orders entered prior to January 1, 1976, are subject to expiration. We are in agreement with this conclusion. The most reasonable and logical interpretation of the statutory language (see fn. 1, *ante*) is that complete coverage was intended; i.e., that the provision for expiration applies to all commitments, and not just commitments made after the effective date of the amendment. Moreover, a different interpretation would raise serious constitutional questions. Under the equal protection clauses of the

---

[1] Welfare and Institutions Code section 6500.1 now provides, in full:

"On and after July 1, 1971, no mentally retarded person may be committed to the State Department of Health pursuant to this article, unless he is a danger to himself or others.

"Any order of commitment made pursuant to this article shall expire automatically one year after the order of commitment is made. This section shall not be construed to prohibit any party enumerated in Section 6502 from filing subsequent petitions for additional periods of commitment. In the event such subsequent petitions are filed, the procedures followed shall be the same as with an initial petition for commitment.

"In any proceedings conducted under the authority of this article the alleged mentally retarded person shall be informed to his right to counsel by the court; and if he does not have an attorney for the proceedings the court shall immediately appoint the public defender or other attorney to represent him. The person shall pay the cost for such legal service if he is able."

California and federal Constitutions, statutes which affect fundamental interests must be applied uniformly unless classification is necessary to further some compelling state interest. (See *In re Gary W.*, 5 Cal.3d 296, 306 [96 Cal.Rptr. 1, 486 P.2d 1201]; *In re Kapperman*, 11 Cal.3d 542, 545 [114 Cal.Rptr. 97, 522 P.2d 657].) The distinction between indefinite commitment and commitment for a single year substantially involves the fundamental interest of personal liberty, and therefore it would appear that the state would be required to demonstrate that different treatment of persons according to their commitment date was necessary to further a compelling state interest. There is also some question whether indefinite commitment of the mentally retarded would satisfy the requirements of due process of law. (See *Jackson v. Indiana*, 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845]; *People v. Feagley*, 14 Cal.3d 338, 358-376 [121 Cal.Rptr. 509, 535 P.2d 373]; *In re Davis*, 8 Cal.3d 798, 803-805 [106 Cal.Rptr. 178, 505 P.2d 1018].) In view of these serious difficulties, and the willingness of the Attorney General to concede that pre-1976 commitments are subject to expiration, we construe Welfare and Institutions Code section 6500.1 to so provide.

## II

A related question is *when* pre-1976 commitments expire. It is inconceivable that the Legislature intended all such commitments to expire January 1, 1976. The cardinal rule of construction is that statutes are to be interpreted to produce a reasonable result. (*Alford v. Pierno*, 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) Accordingly, to allow a sufficient interval for orderly transition, we construe the statute as providing for expiration of all pre-1976 orders on January 1, 1977, one year from the effective date of the statute.

We understand that the state, quite properly, has begun a review of all pre-1976 commitments and that recommitment proceedings have begun in a number of instances. Thus it is hoped that the state will have completed its review by January 1, 1977. Any person committed prior to 1976 who has not been recommitted by that date will be entitled to release which may be obtained by a proceeding in habeas corpus. In the interim, of course, habeas corpus will remain available to those who seek it on other grounds; for example, that their initial commitments were invalid or that they are eligible for release pursuant to Health and Safety Code sections 38120-38121.

## III

■ Next, we take up the question whether there is a right to jury trial, upon request, in a commitment or recommitment proceeding. Although there is no express statutory provision for jury trial in such proceedings, the Attorney General has conceded that such right exists. We agree.

Our Supreme Court strongly intimated its opinion on this question in *In re Gary W., supra,* 5 Cal.3d 296. That case involved a ward of the California Youth Authority who had been committed at age 19. The ward would have been entitled to release after two years of confinement and after obtaining his majority, but the Youth Authority filed a petition under Welfare and Institutions Code section 1800 requesting an extension of confinement for two years on the grounds that the ward was "physically dangerous to the public due to his mental or physical deficiency, disorder, or abnormality." On appeal, the ward successfully contended that he was entitled to a jury trial on the allegations of the petition.

Examining the various statutory provisions governing involuntary commitments, the court found that only Youth Authority wards and the mentally retarded were subject to involuntary commitment for extended periods without benefit of jury trial. The court held that where proceedings result in substantial loss of personal liberty, the state acts unconstitutionally, in violation of the equal protection clauses[2] of the California and federal Constitutions, if it grants jury trial to some groups while denying it to others, unless the different treatment is shown to be necessary to achieve a compelling state interest. (*In re Gary W., supra,* 5 Cal.3d 296, 306-307.) No compelling interest justified denial of jury trial to Youth Authority wards in Welfare and Institutions Code section 1800 proceedings. In reply to an argument that denial of jury trial to Youth Authority wards could be justified by denial of the same right to the allegedly mentally retarded, the court replied: "The state does not meet its burden of demonstrating a compelling interest in denying the right to jury trial to Youth Authority wards . . . by pointing out that alleged mentally retarded persons are similarly discriminated against." (*Id.,* 5 Cal.3d at p. 308. See also, *People* v. *Feagley, supra,* 14 Cal.3d 338, 357, fn. 13.)

---

[2]The Supreme Court has stated that its holding in *Gary W.* was also based on due process considerations. (*People* v. *Smith,* 5 Cal.3d 313, 317 [96 Cal.Rptr. 13, 486 P.2d 1213].)

It is at once apparent that the logic of *Gary W.* is controlling here. The same fundamental interest (personal liberty) and the same procedural safeguard (jury trial) are involved in the same type of proceeding (involuntary commitment). The state has not attempted to justify denial of jury trial in commitment or recommitment proceedings by reference to any compelling interest, and we are disinclined to search for one unaided. Therefore we hold that in commitment or recommitment proceedings under Welfare and Institutions Code section 6500 et seq. allegedly mentally retarded persons are entitled to jury trial upon request.

## IV

■ We come next to the main issue presented by these consolidated proceedings: Whether there is a right to jury trial in a habeas corpus proceeding brought by a person committed pursuant to Welfare and Institutions Code section 6500 et seq.

Health and Safety Code sections 38120[3] and 38121 provide a

[3]Health and Safety Code section 38120 provides:

"Every adult who is or has been admitted or committed to a state hospital, community care facility as defined in Section 1504, or health facility as defined in Section 1250, as a developmentally disabled patient shall have a right to a hearing by writ of habeas corpus for his release from the hospital, community care facility or health facility after he or any person acting on his behalf makes a request for release to any member of the staff of the state hospital, community care facility or health facility or to any employee of a regional center.

"The member of the staff or regional center employee to whom a request for release is made shall promptly provide the person making the request for his signature or mark a copy of the form set forth below. The member of the staff, or regional center employee, as the case may be, shall fill in his own name and the date, and, if the person signs by mark, shall fill in the person's name, and shall then deliver the completed copy to the medical director of the state hospital, the administrator or director of the community care facility or the administrator or director of the health facility, as the case may be, or his designee, notifying him of the request. As soon as possible, the person notified shall inform the superior court for the county in which the state hospital, community care facility, or health facility is located of the request for release and shall transmit a copy of the request for release to the person's parent, guardian, or conservator together with a statement that notice of judicial proceedings taken pursuant to such request will be forwarded by the court. The copy of the request for release and such notice shall be sent by the person notified by registered or certified mail with proper postage prepaid addressed to the addressee's last known address and with a return receipt requested. The person notified shall also transmit a copy of the request for release and the name and address of the person's parent, guardian, or conservator to the court.

"Any person who intentionally violates this section is guilty of a misdemeanor.

"The form for a request for release shall be substantially as follows:

"(Name of the state hospital, community care facility, or health facility or regional center) _____ day of _____ 19____.

mechanism by which any developmentally disabled[4] adult committed to certain designated facilities, including state hospitals, may obtain a hearing in Superior Court on that person's eligibility for release. The person is entitled to release upon a finding of any of the following: That

"I, _____ (member of the staff of the state hospital, community care facility, or health facility or employee of the regional center), have today received a request for the release from _____ (name of state hospital) State Hospital, community care facility, or health facility of _____ (name of patient) from the undersigned patient on his own behalf or from the undersigned person on behalf of the patient.

"_____
"Signature or mark of patient making request for release.

"_____
"Signature or mark of person making request on behalf of patient."

Section 38121 provides:

"Judicial review shall be in the superior court for the county in which the state hospital, community care facility, or health facility is located. The adult requesting to be released shall be informed of his right to counsel by a member of the staff of the state hospital, community care facility, or health facility and by the court; and if he does not have an attorney for the proceedings, the court shall immediately appoint the public defender or other attorney to assist him in preparation of a petition for the writ of habeas corpus and to represent him in the proceedings. The person shall pay the costs of such legal service if he is able.

"At the time the petition for the writ of habeas corpus is filed with court, the clerk of the court shall transmit a copy of the petition, together with notification as to the time and place of any evidentiary hearing in the matter, to the parent, guardian, or conservator of the person seeking release or for whom release is sought and to the director of the appropriate regional center. Such notice shall be sent by registered or certified mail with proper postage prepaid addressed to the addressee's last known address and with a return receipt requested.

"The court shall either release the adult or order an evidentiary hearing to be held not sooner than five judicial days nor more than 10 judicial days after the petition and notice to the adult's parent, guardian, or conservator and to the director of the appropriate regional center are deposited in the United States mail pursuant to this section. If the court finds (a) that the adult requesting release or for whom release is requested is not developmentally disabled, or (b) that he is developmentally disabled and that he is able to provide safely for his basic personal needs for food, shelter, and clothing, he shall be immediately released. If the court finds that he is developmentally disabled and that he is unable to provide safely for his basic personal needs for food, shelter, or clothing, but that a responsible person or a regional center or other public or private agency is willing and able to provide therefor, the court shall release the developmentally disabled adult to such responsible person or regional center or other public or private agency, as the case may be, subject to any conditions which the court deems proper for the welfare of the developmentally disabled adult and which are consistent with the purposes of this division.

"If in any proceeding under this section, the court finds that the adult is developmentally disabled and has no parent, guardian, or conservator, and is in need of a guardian or conservator, the court shall order the appropriate regional center or the Department of Health to initiate, or cause to be initiated, proceedings for the appointment of a guardian or conservator for the developmentally disabled adult."

[4] As defined in Health and Safety Code section 38003, the developmentally disabled include, but are not limited to, the mentally retarded as defined in Welfare and Institutions Code section 6500.

the person is not developmentally disabled; that the person is able to care for his basic personal needs; or that a responsible person or agency is able and willing to care for the person. In addition to this particular form of statutory habeas corpus in which the issue is eligibility for release, there is also available the traditional habeas corpus proceeding challenging the legality of the detention.

Our Supreme Court has held that persons who have been committed following acquittal of criminal charges by reason of insanity are entitled to jury trial upon request in a proceeding on an application for release pursuant to Penal Code section 1026a.[5] (*In re Franklin,* 7 Cal.3d 126, 148 [101 Cal.Rptr. 553, 496 P.2d 465].) The court referred to its earlier decision in *Gary W.,* thereby implying that jury trial was mandated by equal protection principles.

Although there are points of similarity between Penal Code section 1026a and Health and Safety Code sections 38120-38121, considerations of equal protection do not apply with equal force to the latter proceeding. Although both proceedings involve applications for release from confinement, and in both the basic allegation is that the reasons for confinement have ceased to exist, the Penal Code proceeding may be initiated not more than once yearly and *it is the only mechanism provided for periodic re-examination of the justification for confinement.* On the other hand, there is no limit on the frequency of petitions under Health and Safety Code sections 38120-38121, and, as previously mentioned, Welfare and Institutions Code section 6500.1 contemplates yearly recommitment proceedings to test the suitability of continued confinement. Since we have held that persons confined as mentally retarded have the right to jury trial on annual recommitment proceedings, such annual proceedings afford the allegedly mentally retarded rights substan-

---

[5]Penal Code section 1026a provides: "An application for the release of a person who has been committed to a state hospital or other facility, as provided in Section 1026, upon the ground that his sanity has been restored, may be made to the superior court of the county from which he was committed, either by such person or by the superintendent of the state hospital or other facility in which the said person is confined. The person or the superintendent in charge of the state hospital or other facility shall transmit a copy of the application to the county mental health director or his designee. No hearing upon such application shall be allowed until the person committed shall have been confined or placed on outpatient treatment for a period of not less than 90 days from the date of the order of commitment. If the finding of the court be adverse to releasing such person upon his application for release, on the ground that his sanity has not been restored, he shall not be permitted to file a further application until one year has elapsed from the date of hearing upon his last preceding application. In any hearing authorized by this section the burden of proving that his sanity has been restored shall be upon the applicant."

tially similar to those available under Penal Code section 1026a to persons committed following acquittal on grounds of insanity.

Since there are no statutory grounds for ordering jury trials in special habeas corpus proceedings under Health and Safety Code sections 38120-38121 or in traditional habeas corpus proceedings challenging the legality of the confinement, and since equal protection principles do not require that the right be made available in such proceedings, such proceedings are to be decided without a jury. For similar reasons, we also conclude that, as no constitutional impediment has been demonstrated, the burden of proof in such proceedings is proof by a preponderance of the evidence.

## V

To provide guidance to the lower courts, where commitment and recommitment proceedings are now in progress, the parties urge us to decide questions related to standard of proof and unanimity of verdict in such proceedings. However, disposition of the petitions before us does not require resolution of these issues because these petitions relate to habeas corpus proceedings in the superior court rather than commitment proceedings. We decline to give an advisory opinion in these matters.

Certain additional contentions are raised in the various petitions. In light of our limited purpose in granting the alternative writs, we have not discussed and do not reach the additional contentions.

Consistent with the views stated above, we make the following dispositions: In number 4 Civil 15715 the writ of prohibition is amended to delete all references to proceedings in the superior court other than case number 167328 and as so amended the petition's request for a peremptory writ of prohibition is granted; in numbers 4 Civil 15729, 4 Civil 15740, and 4 Civil 15786, the peremptory writs are denied, the alternative writs and orders to show cause heretofore issued are discharged.

Tamura, J., and Morris, J., concurred.

A petition for a rehearing was denied September 2, 1976, and the petition of the real parties in interest in No. 15715 and application of the petitioners in Nos. 15729, 15740 and 15786 for a hearing by the Supreme Court was denied October 14, 1976.