[Civ. No. 20461. Fourth Dist.. Div. Two. Apr. 2. 1979.]

In re ROSEMARY WATSON on Habeas Corpus.

## COUNSEL

Charles E. Ward, Public Defender, Littleton M. Gunn and Andrew E. Rubin, Deputy Public Defenders, for Petitioner.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Jay M. Bloom, Deputy Attorneys General, for Respondent.

## OPINION

**MORRIS, J.**—Petitioner was committed to the State Department of Health under Welfare and Institutions Code section 6500.1,[1] as a mentally retarded person, on January 25, 1978. Petitioner filed a petition for a writ of habeas corpus in the San Bernardino County Superior Court. It was denied. She then filed a petition for habeas corpus in this court, which was denied on September 5, 1978. Thereafter, she petitioned the California Supreme Court, and on October 25, 1978, the Supreme Court ordered respondent to show cause before this court why the relief prayed for should not be granted.

---

[1] Section 6500.1 was renumbered section 6500 and amended by Statutes 1978, chapter 1319, section 2 (No. 11 West's Cal. Legis. Service, pp. 4589-4590, No. 8 Deering's Adv. Legis. Service, pp. 97-100).

All statutory references are to the Welfare and Institutions Code unless otherwise specified.

The findings of fact on denial of the writ in the superior court were based upon the following stipulation by the attorneys for the parties: (1) Petitioner was committed to Patton State Hospital as a developmentally disabled person on January 25, 1978, by the Superior Court, Los Angeles County;[2] (2) petitioner was not present at the commitment hearing, but was outside the hearing room with a representative from the regional center; (3) petitioner's counsel had discussed the proceedings with petitioner, petitioner knew counsel would submit the matter on the papers and reports available, and petitioner was aware that the likely outcome would be her commitment to the state hospital.

Respondent first contends that since the issues presented in the petition could have been raised on appeal, they may not properly be raised on habeas corpus. The rule relied upon by respondent was stated by the California Supreme Court in *In re Walker* (1974) 10 Cal.3d 764 [112 Cal.Rptr. 177, 518 P.2d 1129], as follows: "The general rule is that 'habeas corpus cannot serve as a substitute for appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.'" (*Id.,* at p. 773, quoting from *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513].)

That special circumstances do exist in this case will become apparent in our consideration of the merits. ■ We have concluded that the factual circumstances bring this case within the principle stated in *In re Winchester* (1960) 53 Cal.2d 528 [2 Cal.Rptr. 296, 348 P.2d 904], that "Habeas corpus has become a proper remedy in this state to collaterally attack a judgment of conviction which has been obtained in violation of fundamental constitutional rights." (*Id.,* at p. 531.) Although petitioner has been convicted of no crime, she is no less entitled to the protection of her fundamental constitutional rights, and a judgment obtained in violation of those rights is similarly vulnerable to collateral attack.

Commitment under Welfare and Institutions Code section 6500.1 is a commitment for placement in a state hospital,[3] and no mentally retarded

[2] The attorneys stipulated that petitioner was committed as a developmentally disabled person on January 25, 1978. Actually section 6500.1 provided for commitment of "mentally retarded" persons upon proof of dangerousness. Although the statutory definition of developmental disability includes mental retardation (§ 4512), no mentally retarded person may be committed under this section without proof of dangerousness to self or others.

[3] At the time of petitioner's commitment, section 6509 provided for commitment to the State Department of Health for hospitalization. Section 6509, as it became operative July

person may be so committed without proof of dangerousness to self or others. ■ Although the commitment order expires one year after it is made, it is clear that the hearing to determine a person's mental retardation and dangerousness may result in a substantial loss of personal liberty. (See *O'Brien* v. *Superior Court* (1976) 61 Cal.App.3d 62, 68-69 [132 Cal.Rptr. 13].) Under such circumstances, petitioner is entitled to a hearing that complies with the due process requirements of the United States and California Constitutions. Petitioner contends that her commitment violated fundamental constitutional rights. We consider the petition on its merits.

Rosemary Watson was not present at her commitment hearing on January 25, 1978. No evidence was presented to show that she was not physically able to attend, but rather the record shows that she was physically present just outside the courtroom. No evidence was presented to show that her attendance would have aggravated her propensity for dangerous conduct or that she would not have been able to understand and participate in the proceedings. To the contrary, it was stipulated that she was aware of the nature of the proceedings. She did not waive her personal presence. In fact, the record does not show that she was ever advised of her right to be present at the hearing.

To support the issuance of a writ of habeas corpus, petitioner contends that her constitutional rights were violated in the following particulars: (1) The record does not affirmatively show that petitioner knowingly and intelligently waived her rights to a jury trial, confrontation of witnesses, and the privilege against self-incrimination or was incapable of doing so, and (2) the record does not show that petitioner was given an opportunity to be present or that she was unable to be present.

Petitioner contends that the procedural rights established in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122, 135 [81 Cal.Rptr. 577, 460 P.2d 449], should apply to the developmentally disabled, and that the absence of a valid on-the-record waiver deprived her of these rights. ■ Petitioner's assertion that she is entitled to a jury trial in the commitment proceeding

---

1. 1978, provided for commitment to the State Department of Developmental Services for hospitalization. The section was again amended in 1978 to provide for commitment to the State Department of Developmental Services for "suitable treatment and habilitation services," which may include placement in a state hospital. (Stats. 1971, ch. 1593, § 424, p. 3364; Stats. 1977, ch. 1252, § 643, pp. 4603-4604; Stats. 1978, ch. 1319, § 7.)

is correct. (*O'Brien* v. *Superior Court, supra,* 61 Cal.App.3d 62, 68-69.) She has no privilege not to testify in a commitment proceeding. (*Cramer* v. *Tyars* (1979) 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793].) This is not a criminal proceeding (*id.,* at pp. 137-138), and the extent to which the procedural rights of *Boykin* v. *Alabama* and *In re Tahl* apply in commitment proceedings need not be determined in this proceeding.

We have concluded that the denial of petitioner's right to be present during the presentation of evidence against her which could and did result in a substantial loss of personal liberty, absent an on-the-record showing that she waived that right or was incapable of doing so by reason of either physical or mental incapacity, deprived her of her fundamental constitutional right to due process of law.

Petitioner argues that because the proceeding may result in the loss of freedom she should be afforded "criminal" due process (*In re Gault* (1967) 387 U.S. 1, 49-50 [18 L.Ed.2d 527, 558-559, 87 S.Ct. 1428]; *In re Winship* (1970) 397 U.S. 358, 365-366 [25 L.Ed.2d 368, 375-377, 90 S.Ct. 1068]), and that the record must affirmatively reflect the application of the due process standards. (See *In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345], reasonable doubt must appear in the record in a juvenile hearing on a supplementary petition.)

Although we agree that the hearing at which petitioner was committed failed to comport with due process standards, we find it unnecessary to determine whether all of the requirements of criminal procedure should be applicable to commitment proceedings. The fact that constitutional rights are most frequently vindicated in criminal cases should not blind us to the truth that certain fundamental constitutional rights are guaranteed to *every person,* not solely to those who are accused of criminal activity. Due process is one such fundamental right. Both the Fourteenth Amendment to the United States Constitution and now article I, section 7 of the California Constitution prevent the state from depriving any person of life, liberty or property without due process.

The right of a defendant's personal presence at trial is a condition of due process to the extent that a fair and just hearing would be thwarted by the absence of the accused. (*Snyder* v. *Massachusetts* (1934) 291 U.S. 97 [78 L.Ed. 674, 54 S.Ct. 330, 90 A.L.R. 575].) While it is true that this right, as others previously noted, has been generally vindicated in criminal cases, the right to be present should not be confused with the

privilege of confrontation which is the right of an accused to confront his accusers.[4] ▮▮ The right to a fair hearing is an essential of due process whether life, liberty or property is being taken by criminal or civil process. Therefore, our inquiry is simply into the relationship between petitioner's presence at her commitment hearing and the fundamental justice assured her by the Constitutions of the United States and of the State of California.

We are mindful that what constitutes due process depends upon the circumstances and may vary to some extent with the subject matter and the necessities of the situation. (*Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].) Moreover, it is recognized that treatment of persons suffering from mental problems may require special considerations in some respects different from those accused of criminal activity. (See *Cramer* v. *Tyars, supra,* 23 Cal.3d 131.) Because of these differences, it may well be that the showing necessary to constitute a waiver of the right of personal presence in a commitment proceeding may differ in degree and form from that required in a criminal case. However, we are well satisfied that the procedure followed in this case does not satisfy the fundamental requirements of due process.

▮▮ " 'While no exact definition of due process may be formulated, it is established that due process is absent if a party is denied the right to have his cause tried and determined in accordance with the procedures that are applied in other cases of like character. [Citations.] It implies the right not to be deprived of one's property or liberty without evidence having been offered against him in accordance with the established rules, and an opportunity to cross-examine those whose evidence is given against him, and the opportunity to present evidence in his own behalf. [Citations.]' " (*Collins* v. *Superior Court* (1957) 150 Cal.App.2d 354, 363-364 [310 P.2d 103].) In *Ex parte Wall* (1883) 107 U.S. 265 [27 L.Ed. 552, 2 S.Ct. 569], the Supreme Court said: "In all cases, that kind of procedure is due process of law, which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts." (*Id.,* at p. 289 [27 L.Ed. at p. 562]; see also *San Jose Ranch Co.* v. *San Jose etc. Co.* (1899) 126 Cal. 322, 326 [58 P. 824].)

▮▮ A person who may be subjected to a substantial loss of liberty for being dangerously mentally retarded has as much stake in appearing before the committing judge as one who may lose that liberty through

---

[4]Since dangerousness is a condition for commitment under section 6500.1, the factual allegation is not without analogy to a criminal accusation.

criminal process. Indeed, the nature of the proceeding is such that the personal conduct of the alleged mentally retarded person may more surely affect the reliability of the judgment and thus, the fairness of the proceeding, than does the courtroom conduct of one accused of crime in a criminal proceeding.

It seems to us that the practice of dispensing with the presence of the alleged dangerously mentally retarded person suggests a predetermination of the mental condition. Such practice is unacceptable, for it effectively denies the person the independent judgment of the judge at the commitment hearing. If the person is so mentally retarded as to be unable to comprehend the advisal of the right to be present and other rights incident to a fair hearing, the record should affirmatively reflect that fact. The determination of the person's ability to attend the hearing and/or of the ability to give an intelligent waiver of constitutional rights, including the right to be present, must be made by the trial judge based upon competent evidence.

In the absence of an affirmative showing that a patient is physically unable to attend or has waived personal attendance, due process requires the physical presence of the alleged mentally retarded person at the commitment hearing under section 6500.1. In the case of a normal probate conservatorship, Probate Code section 1754 requires proof of medical inability by a duly licensed medical practitioner before proceeding in the absence of the proposed conservatee. Where personal liberty is at stake nothing less can be tolerated.

The record in this case reveals that not only was petitioner physically able to attend, she was actually present outside the courtroom, yet the record fails to reveal that she was advised of any of her rights, waived any of her rights, or was incapable of understanding her rights.

The writ is granted.

Gardner. P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied April 16, 1979, and respondent's petition for a hearing by the Supreme Court was denied June 14, 1979.