[No. C005511. Third Dist. July 6, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS ALVAS, Defendant and Appellant.

1460

**COUNSEL**

Harry D. Roth, under appointment by the Court of Appeal, for Defendant and Appellant.

John D. Phillips, District Attorney, and David Wellenbrock, Chief Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**EVANS, J.**—Following a trial by court, defendant was found to be mentally retarded and a danger to himself or others (Welf. & Inst. Code, § 6500)[1]

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

and was *involuntarily committed to the Stockton Developmental Center for one year.*

On appeal defendant contends the judgment must be reversed because (1) the record fails to show an advisement and waiver of the right to a jury trial on the issues of dangerousness and retardation, and (2) section 6500 is unconstitutionally vague for failure to define "dangerousness" as it is used in that section.[2]

Conceding that defendant's first contention has merit and that reversal is therefore required, the People have not addressed defendant's contention challenging the constitutionality of section 6500. The concession is appropriate, although not on the authority cited by the parties to this appeal.

 The People and defendant each rely on *O'Brien* v. *Superior Court* (1976) 61 Cal.App.3d 62 [132 Cal.Rptr. 13] for the proposition that where a court trial results in the defendant's commitment pursuant to section 6500 proceedings, reversal is required unless the record shows an advisement and

---

[2] Although section 6500 was amended in 1989 (see Stats. 1989, ch. 897, § 47), the amendments have no bearing on the issues and results of the present case. At the time of defendant's hearing section 6500 provided: "On and after July 1, 1971, no mentally retarded person may be committed to the State Department of Developmental Services pursuant to this article, unless he is a danger to himself or others. For the purposes of this article, dangerousness to self or others shall be considered to include, but not be limited to, a finding of incompetence to stand trial pursuant to the provisions of Chapter 6 (commencing with Section 1367) of Title 10 of Part 2 of the Penal Code when the defendant has been charged with murder, mayhem, a violation of Section 207 or 209 of the Penal Code in which the victim suffers intentionally inflicted great bodily injury, robbery perpetrated by torture or by a person armed with a dangerous or deadly weapon or in which the victim suffers great bodily injury, a violation of Section 447a of the Penal Code involving a trailer coach, as defined in Section 635 of the Vehicle Code, or any dwelling house, a violation of subdivision (2) or (3) of Section 261 of the Penal Code, a violation of Section 459 of the Penal Code in the first degree, assault with intent to commit murder, a violation of Section 220 of the Penal Code in which the victim suffers great bodily injury, a violation of Section 12303.1, 12303.3, 12308, 12309, or 12310 of the Penal Code, or if the defendant has been charged with a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person.

"Any order of commitment made pursuant to this article shall expire automatically one year after the order of commitment is made. This section shall not be construed to prohibit any party enumerated in Section 6502 from filing subsequent petitions for additional periods of commitment. In the event such subsequent petitions are filed, the procedures followed shall be the same as with an initial petition for commitment.

"In any proceedings conducted under the authority of this article the alleged mentally retarded person shall be informed of his right to counsel by the court; and if he does not have an attorney for the proceedings the court shall immediately appoint the public defender or other attorney to represent him. The person shall pay the cost for such legal service if he is able. At any judicial proceeding under the provisions of this article, allegations that a person is mentally retarded and a danger to himself or to others shall be presented by the district attorney for the county unless the board of supervisors, by ordinance or resolution, delegates such authority to the county counsel."

waiver of the defendant's right to a jury trial. Neither *O'Brien* nor any other case disclosed by our research reaches such a conclusion.

The defendant in *O'Brien* was the subject of section 6500 proceedings and unsuccessfully moved for a jury trial on the issues of his alleged mental retardation and dangerousness. Following a court trial in which those issues were determined adversely to him, defendant was committed for treatment for one year; he sought habeas corpus relief. The *O'Brien* court held, on equal protection and impliedly on due process grounds, that even though there was no statutory right to a jury trial for a defendant subject to section 6500 proceedings, that "in commitment or recommitment proceedings under Welfare and Institutions Code section 6500 et seq. allegedly mentally retarded persons are entitled to a jury trial *upon request*." (61 Cal.App.3d at p. 69, italics added.)

The record in this instance does not contain such a request. However, the lack of a request for a jury trial notwithstanding, and for reasons to be explained, we conclude that defendant's contention must be sustained pursuant to both the equal protection and the due process clauses of the federal and state Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and as a consequence this matter must be reversed and remanded for retrial.

Effective July 1, 1969, the Legislature enacted a sweeping revision of the mental health laws (§ 5000 et seq.), known as the Lanterman-Petris-Short Act (hereafter LPS Act). The LPS Act, which expressly excludes the mentally retarded (§ 5002), applies, inter alia, to those who as a result of mental disorder are a danger to themselves or others or are gravely disabled, and provides for 72-hour and 14-day periods of detention for treatment and evaluation. (§§ 5150, 5170, 5200, 5225, and 5250.) If further detention is required, sections 5300, 5301, and 5304 provide the procedural mechanism for commitment and recommitment periods of 180 days each. With respect to these extended commitments, the trial court is statutorily required (§ 5302) to advise the defendant of his right to a jury trial on the allegations. No similar safeguard exists for those accused of being dangerously mentally retarded.

Where two groups are similarly situated, constitutional mandates of equal protection require equal treatment of both groups, unless the state can show a compelling interest in discriminating between them. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; *In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201]; *People* v. *Feagley* (1975) 14 Cal.3d 338, 352 [121 Cal.Rptr. 509, 535 P.2d 373].)

 With respect to involuntary commitments, we cannot conceive of any rational distinction to be made between the class of persons who due to mental disorder constitute a danger or are gravely disabled and the class of persons who pose a similar danger because of their mental retardation. At stake for the members of each class is the fundamental interest of liberty. As to each class, liberty of its members is put at risk through no apparent fault of their own, but solely because of mental deficiencies beyond their control. Indeed, in *People* v. *Colvin* (1981) 114 Cal.App.3d 614 [171 Cal.Rptr. 32], it was held on equal protection grounds that a defendant in a mentally disordered sex offender proceeding (former § 6300 et seq., repealed by Stats. 1981, ch. 928, § 2, p. 3485) must be given notice of his right to a jury trial on the issue of his commitment because a comparable right was provided for the mentally disordered under the LPS Act. (At pp. 622-625.)

This being the case, no compelling reason exists for the disparate treatment in involuntary commitments between the two classes by providing those alleged to come within the LPS Act with the procedural safeguard of advisement of the right to a jury trial while denying it to those defendants charged with dangerous mental retardation. We conclude that equal protection requires that a defendant in a section 6500 proceeding be advised of his right to a jury trial.

Although the parties have not so argued, we believe the same conclusion is compelled under a due process analysis.

The due process interest at stake is the defendant's personal liberty, a " 'fundamental interest, second only to life itself . . . .' " (*In re Hop* (1981) 29 Cal.3d 82, 89 [171 Cal.Rptr. 721, 623 P.2d 282], quoting from *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].) In *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444], it was held that in serious criminal cases, i.e., where the punishment was not less than six months and the offense otherwise qualified as petty, that liberty was such a fundamental interest that the Fourteenth Amendment's due process clause required that it be protected by the Sixth Amendment's guaranty of the right to a jury trial. (At p. 149 [20 L.Ed.2d at p. 496].) In *In re Gary W., supra,* 5 Cal.3d 296, it was concluded that due process, as well as equal protection, required that in proceedings to extend the commitments of Youth Authority wards predicated upon their need for further treatment owing to their continuing dangerousness to the public due to mental or physical abnormalities ( § 1800), the wards were entitled to jury trials. In so holding, *Gary W.* observed that loss of liberty occasioned by involuntary confinement for treatment is not made less fundamental by virtue of its purpose, and that in extending the right to trial by jury to persons subject to civil commitment proceedings (§ 5303 of the LPS Act)

the Legislature recognized that the interest involved was no less fundamental than that involved in criminal proceedings. (At pp. 306-307.)

Following the reasoning of the cited authority makes clear that the focus is on the resultant deprivation of liberty, rather than upon the procedural mechanism, be it designated civil or criminal, used in achieving that result. We think it is beyond dispute that the right to a jury trial in adult involuntary commitment proceedings is a right of constitutional dimension. ■ Where "a constitutional right exists, it must be observed unless waived and . . . a waiver implies, among other things, a knowledge that the right existed." (*People* v. *Ruiz* (1969) 1 Cal.App.3d 992, 1000 [82 Cal.Rptr. 408]; *People* v. *Hunter* (1969) 270 Cal.App.2d 683, 685 [76 Cal.Rptr. 101].) ■ Consequently, a defendant proceeded against under section 6500 must be advised of his right to a jury trial.

■ Moreover, in order to insure an adequate record for appellate review and to forestall collateral proceedings challenging the giving of such advisement, which often necessitate additional hearings, we hold that before adjudicating a section 6500 proceeding for commitment or recommitment in a trial by court the record must show an advisement and waiver of the right to a jury trial. (Cf. *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449]; *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], each holding the record must show that the constitutional rights to confrontation, against self-incrimination, and to a jury trial, were enumerated for and waived by the accused.) Of course, "[i]f the person is so mentally retarded as to be unable to comprehend the advisal of the right [to a jury trial], the record should affirmatively reflect that fact . . . [with that determination being] made by the trial judge based upon competent evidence." (*In re Watson* (1979) 91 Cal.App.3d 455, 462 [154 Cal.Rptr. 151].)

Since we have stated a new rule of law, we must consider whether the decision should have retroactive effect. (*People* v. *Whittington* (1977) 74 Cal.App.3d 806, 823 [141 Cal.Rptr. 742].)

■ "Whether a judicial decision establishing new constitutional standards is to be given retroactive effect is customarily determined by weighing the following factors: (a) the purpose to be served by the new standards, (b) the extent of reliance by . . . authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards.' (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; accord *In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841].) . . . Decisions have generally been made fully retroactive only where the right vindicated is one which is essential to

the integrity of the fact-finding process. On the other hand, retroactivity is not customarily required when the interest to be vindicated is one which is merely collateral to a fair determination of guilt or innocence. (*In re Johnson, supra*, 3 Cal.3d 404, 410-413 and cases cited therein.)" (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409, 559 P.2d 1028].)

 The reason for the new rule is to more adequately safeguard an individual's right to a jury trial, a right which he already possesses (*O'Brien* v. *Superior Court, supra*, 61 Cal.App.3d at pp. 68-69), on the question whether he is dangerously mentally retarded. As such it has no bearing on the reliability of the fact-finding process, but instead assures application of a procedural safeguard and aids appellate courts in determining whether the individual made an intelligent and knowing waiver of the right. Hence this factor weighs against retroactivity.

Consideration of the second two criteria likewise weighs against retroactivity. Since there is no statutory requirement for a jury trial on allegations of dangerousness and mental retardation, and *O'Brien* required only that defendants be given a jury trial upon demand (61 Cal.App.3d at p. 69), it was reasonable for trial courts to conclude that no oral advisement of the right to a jury trial was required. Furthermore, retroactive application of our new rule would seriously disturb the administration of justice. No doubt many individuals have been committed or recommitted for their own and/or the protection of others without the advisement of the right to a jury trial. To give retroactive effect to our rule would nullify all of these commitment orders, an obviously undesirable effect. Therefore we limit the application of our decision to those whose appeals are pending and to section 6500 hearings conducted after this decision becomes final.

 Defendant argues section 6500 (fn. 2 *ante*, p. 1462) is constitutionally void for vagueness due to its failure to define the term "dangerousness." One way in which a statute is deemed unconstitutionally vague is when it fails to provide explicit standards for those charged with its implementation and " 'impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, . . .' " (*Money* v. *Krall* (1982) 128 Cal.App.3d 378, 393-394 [180 Cal.Rptr. 376], quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].) Section 6500 does define "dangerousness" for those mentally retarded defendants charged with specified criminal offenses who are found incompetent to stand trial (Pen. Code, § 1367 et seq.), but the section fails to define "dangerousness" for those alleged to come within its scope who are not both incompetent and charged with one of the designated offenses. As to this latter class,

defendant claims, the statute is arbitrarily enforceable, and therefore unconstitutionally vague.

■ "If feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 175 [167 Cal.Rptr. 854, 616 P.2d 836].) ■ Section 6500's failure to define "dangerousness" for all individuals within its scope is not fatal to its constitutionality. Both the LPS Act and section 6500 et seq. have been enacted for the obvious purpose of protecting and treating those who due to various mental deficiencies pose a danger to themselves or others. (See, e.g., § 5001.) Section 5300 of the LPS Act equates "danger" to the potential for "infliction of substantial physical harm." (See subds. (a), (b), and (c).) Given the similarity of purpose behind the LPS Act and section 6500 proceedings, there is simply no reason to ascribe different meanings to the same term. Therefore we conclude that insofar as "dangerousness" is not defined in section 6500, it should be construed to mean the potential for infliction of substantial harm upon the defendant himself or upon others.

In defendant's opening brief, he also contended that the evidence was insufficient to support either the holding order (§ 6506)[3] or the recommitment order. At oral argument counsel urged that even if we reverse for failure of the trial court to advise and obtain a waiver of the right to jury trial, we should still resolve these questions for the future guidance of the trial court. Counsel also claimed, with respect to the holding order (§ 6506), that defendant was not now barred from review due to his failure to object or to seek relief by extraordinary writ because defendant had neither notice of the section 6506 proceeding nor was he represented by counsel at that proceeding. As will be explained, we decline to consider these claims.

As to the holding order, the record shows that defendant and the public defender were each given notice of the section 6506 hearing. Further, the reporter's transcript of the section 6506 hearing shows that defendant was represented by counsel, and that defendant's counsel submitted the question

---

[3] Welfare and Institutions Code section 6506 provides: "Pending the hearing, the court may order that the alleged dangerous mentally retarded person may be left in the charge of his or her parent, guardian, conservator, or other suitable person, or placed in a state hospital for the developmentally disabled or in the county psychiatric hospital. Prior to the issuance of an order under this section, the regional center shall recommend to the court a suitable person or facility to care for the alleged mentally retarded person. [¶] Pending the hearing the court may order that the person receive necessary habilitation, care, and treatment, including medical and dental treatment. [¶] Orders made pursuant to this section shall expire at the time set for the hearing pursuant to Section 6503. If the court upon a showing of good cause grants a continuance of the hearing on the matter, it shall order that the person be detained pursuant to this section until the hearing on the petition is held."

of defendant's detainment pending the hearing on recommitment upon the summaries prepared by the district attorney.

With regard to the issues of insufficiency of the evidence, approximately one and one-half years have elapsed from the time the holding and recommitment orders were made. Since the holding order expires at the time set for the hearing on recommitment (see § 6506), and the recommitment order itself terminates after one year (see § 6500), defendant has now either been released or has been recommitted on a new set of facts. Whether the evidence for holding or recommitment was or was not sufficient, no relief is now available since the periods for the holding and recommitment orders have expired. Moreover, it seems unlikely that identical or nearly identical facts will arise as a basis for other proceedings; consequently any question regarding sufficiency of the evidence is moot.

One final point, defendant has also contended that the trial court failed to comply with section 6504.5, which requires the court to obtain a report regarding the least restrictive place of confinement which will meet the defendant's needs. However, the record shows that not only did defendant not object to the absence of such a report, but that at the recommitment hearing a doctor testified as to the least restrictive placement which would meet the defendant's needs.

The judgment (order recommitting the defendant) is reversed, and the matter is remanded for proceedings consistent with our opinion.

Puglia, P. J., and Davis, J., concurred.