[No. F057537. Fifth Dist. June 9, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SHELBE WILKINSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III.

544

COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edward R. Jagels, District Attorney, and Craig O. Smith, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**CORNELL, Acting P. J.**—Shelbe Wilkinson was found to be a mentally retarded person pursuant to Welfare and Institutions Code section 6500.[1] She argues the commitment must be reversed because her attorney waived her appearance at the hearing without consulting with her and against her expressed desire to be present. She also asserts that the trial court's order was not supported by substantial evidence.

■ We agree that the trial court erred in accepting the attorney's waiver of Wilkinson's right to be present at the hearing over her objection. Ample case law recognizes that a proposed conservatee has the right under the due process clauses of the federal and state Constitutions to be present at a hearing that could result in the substantial deprivation of liberty. We also conclude the error was not harmless and reverse the trial court's order. We also address, and reject, Wilkinson's remaining arguments.

Finally, the People contend that Wilkinson is incompetent to appeal from the trial court's order and, even if she has the right to appeal, she is not entitled to appointed counsel. We reject these arguments as unsupported by logic or authority.

### FACTUAL AND PROCEDURAL SUMMARY

■ The Kern County District Attorney's Office filed a petition pursuant to section 6500 et seq. seeking to have Wilkinson committed because she is mentally retarded and dangerous to herself and others. Section 6500 permits the commitment of an individual who is (1) mentally retarded, (2) dangerous to himself, herself, or others, and (3) has serious difficulty in controlling his or her dangerous behavior because of his or her mental retardation. (*People v. Sweeney* (2009) 175 Cal.App.4th 210, 216 [95 Cal.Rptr.3d 557] (*Sweeney*).)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

It is undisputed that Wilkinson is mentally retarded within the meaning of the statute. In addition, she is bilaterally deaf, is an insulin-dependent diabetic, and her psychological diagnoses include bipolar disorder, oppositional defiant disorder, and intermittent explosive disorder. Wilkinson is unable to control her diet and her diabetes, putting her in serious danger of harming herself because of fluctuations in her blood-sugar levels. The trial court reached this conclusion and ordered Wilkinson committed to the State Department of Developmental Services for placement at a nonsecure treatment facility or institution that provides 24-hour staffing and is capable of providing services to meet Wilkinson's needs.

## DISCUSSION

Initially, we must address the People's argument that this appeal is moot. The order appealed from was entered over one year ago. A commitment under section 6500 must be renewed on an annual basis. (*Ibid.*) Therefore, Wilkinson either has been released from her commitment or she currently is committed under a new order.

The issues raised here, however, are of continuing public importance. Since a section 6500 order typically will expire before an appeal can be heard, the issues will evade review unless we exercise our discretion to address the merits of the issues. (*Sweeney, supra,* 175 Cal.App.4th at p. 214.)

I.   *Wilkinson's Absence from the Trial*

██ While a section 6500 commitment results in a substantial loss of liberty, it is a civil proceeding, not a criminal proceeding, because the goal of the proceeding is the treatment of the potential committee, not punishment. (*Sweeney, supra,* 175 Cal.App.4th at pp. 221–222; *In re Watson* (1979) 91 Cal.App.3d 455, 459–460 [154 Cal.Rptr. 151] (*Watson*).) Accordingly, not all of the procedural safeguards required in a criminal proceeding are applicable in a section 6500 case. (*Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 270–271 [285 Cal.Rptr. 618] (*Mary K.*).) For example, the potential committee may not refuse to testify, although the Fifth Amendment privilege against self-incrimination applies, as it does in all civil proceedings. (*Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1015 [234 Cal.Rptr. 724].) Nonetheless, the potential loss of liberty entitles the potential committee to substantial procedural protections, such as the right to appointed counsel (§ 6500) and the right to a jury trial and unanimous verdict (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 [152 Cal.Rptr. 425, 590 P.2d 1]).

The main issue in this case is one of those procedural protections guaranteed to a criminal defendant—the right to be present at the hearing that could

result in a loss of liberty. (Cal. Const., art. I, § 15.) Wilkinson was represented by counsel (hereafter appointed counsel) at trial, but Wilkinson did not appear at the initial hearing. The trial court asked appointed counsel about Wilkinson's absence and appointed counsel stated that she would waive Wilkinson's presence.

Wilkinson's grandmother, who was Wilkinson's legal guardian until Wilkinson's 18th birthday, also appeared. She was accompanied by an attorney (hereafter grandmother's counsel) who had acted as an advocate on behalf of Wilkinson while Wilkinson was a minor. The trial court permitted grandmother's counsel to appear in the action as an advocate for Wilkinson based on grandmother's perceptions of Wilkinson's needs. Grandmother's counsel stated she had spoken to Wilkinson and Wilkinson wanted to be present for the hearing. Grandmother's counsel also stated that appointed counsel had not spoken to Wilkinson. Appointed counsel did not voice disagreement with either statement. The trial court accepted the waiver by appointed counsel and proceeded in Wilkinson's absence. Wilkinson argues this ruling was erroneous.

Applicable case law supports Wilkinson's argument. We have located three cases addressing the issue. In *Watson, supra*, 91 Cal.App.3d 455, Watson was committed as a mentally retarded person. The appellate attorneys stipulated to the following facts: (1) Watson was committed as a mentally retarded person; (2) Watson was not present at the commitment hearing, but was outside the courtroom accompanied by a representative from the regional center; (3) Watson's attorney had discussed the proceedings with Watson; (4) Watson was informed counsel would submit the matter on the reports prepared for the hearing; and (5) Watson knew the likely outcome of the hearing would be her commitment to the state hospital. (*Id.* at p. 458.)

After concluding the circumstances in the case justified review of Watson's petition for a writ of habeas corpus, the appellate court turned to the issue of Watson's absence from the hearing. The appellate court first recognized that a one-year commitment as a mentally retarded individual resulted in "a substantial loss of personal liberty." (*Watson, supra*, 91 Cal.App.3d at p. 459.) Accordingly, Watson was "entitled to a hearing that complies with the due process requirements of the United States and California Constitutions." (*Ibid.*) The appellate court noted there was no evidence that (1) Watson was advised of her right to attend the hearing; (2) Watson did not want to attend the hearing; (3) Watson would not have been able to understand the proceedings; or (4) Watson could not attend the hearing because to do so would have aggravated her propensity for dangerous conduct. (*Ibid.*)

After rejecting Watson's assertion that because of the potential loss of liberty she was entitled to all the procedural rights of a criminal defendant,

the appellate court concluded she had the "right to be present during the presentation of evidence against her which could and did result in a substantial loss of personal liberty, absent an on-the-record showing that she waived that right or was incapable of doing so by reason of either physical or mental incapacity." (*Watson, supra,* 91 Cal.App.3d at p. 460.) Watson's absence from the hearing "deprived her of her fundamental constitutional right to due process of law." (*Ibid.*) "A person who may be subjected to a substantial loss of liberty for being dangerously mentally retarded has as much stake in appearing before the committing judge as one who may lose that liberty through criminal process. Indeed, the nature of the proceeding is such that the personal conduct of the alleged mentally retarded person may more surely affect the reliability of the judgment and thus, the fairness of the proceeding, than does the courtroom conduct of one accused of crime in a criminal proceeding. [¶] It seems to us that the practice of dispensing with the presence of the alleged dangerously mentally retarded person suggests a predetermination of the mental condition. Such practice is unacceptable, for it effectively denies the person the independent judgment of the judge at the commitment hearing. If the person is so mentally retarded as to be unable to comprehend the advisal of the right to be present and other rights incident to a fair hearing, the record should affirmatively reflect that fact. The determination of the person's ability to attend the hearing and/or of the ability to give an intelligent waiver of constitutional rights, including the right to be present, must be made by the trial judge based upon competent evidence. [¶] In the absence of an affirmative showing that a patient is physically unable to attend or has waived personal attendance, due process requires the physical presence of the alleged mentally retarded person at the commitment hearing under section [6500]. . . . Where personal liberty is at stake nothing less can be tolerated." (*Id.* at pp. 461–462.)

*Money v. Krall* (1982) 128 Cal.App.3d 378 [180 Cal.Rptr. 376] also involved a section 6500 commitment. The issue was whether the statutes that permitted commitment of mentally retarded persons were unconstitutionally vague. In holding the statutes were constitutional, this court reviewed safeguards enacted to protect the rights of such persons. We noted that "A jury trial must be provided at the commitment hearing unless a jury is waived; the physical presence of the person is required unless a physical disability exists preventing attendance or presence is waived. [Citation.]" (*Krall,* at p. 398.)

This issue was addressed most recently in *People v. Fisher* (2009) 172 Cal.App.4th 1006 [91 Cal.Rptr.3d 609] (*Fisher*), a proceeding under the mentally disordered offender statutes. (Pen. Code, § 2960 et seq.) Fisher was transferred to a state mental hospital as a mentally disordered offender after serving his sentence for forcible oral copulation. (*Id.,* § 288a.) The People petitioned the trial court for an order to administer psychotropic medications against Fisher's wishes. The trial court appointed an attorney to represent

Fisher. Fisher was not present the first four times the matter was called before the trial court. The fourth time the matter was called, counsel stated he had spoken with Fisher, who had indicated a desire to be present at the hearing, but in the conversation he initially " 'did not make that request.' " (*Fisher*, at p. 1011.) Counsel then stipulated to allow the trial court to hear the testimony of one of the state's expert witnesses. The matter was then continued to allow counsel to confer with Fisher. Fisher was present at the next hearing and testified. The trial court granted the People's petition.

The appellate court began by noting that the right to refuse psychotropic medication was protected by both the United States and California Constitutions. (*Fisher, supra,* 172 Cal.App.4th at pp. 1012–1013.) This right could be overcome in nonemergency situations if a court determined the patient was incompetent or was dangerous within the meaning of section 5300. (*Fisher*, at p. 1013.)

■ The appellate court next addressed Fisher's absence from the hearing, at which evidence was presented. It noted that the proceeding was civil in nature and not criminal. Nonetheless, "in civil commitment proceedings, due process guarantees the right to be present during the presentation of evidence absent personal waiver or demonstrated inability to attend. [Citation.] An attorney's authority to control procedural matters in a civil case [citation] does not authorize relinquishment of substantial rights, such as the right to be present, without the client's consent. [Citation.] [Fisher's] constitutional right to a fair hearing was violated here because he did not personally waive his right to be present and was not unable to attend the hearing." (*Fisher, supra,* 172 Cal.App.4th at pp. 1013–1014.)

Our facts, if anything, are more egregious than those in *Fisher*. The trial court was informed by grandmother's counsel that Wilkinson wished to be present at the hearing. Appointed counsel did not dispute this assertion, nor did she dispute the assertion that she (appointed counsel) had not spoken to Wilkinson at the time she waived Wilkinson's appearance at the trial. Nor was any evidence presented to suggest that Wilkinson was incapable of attending the hearing because of physical or mental incapacity. It is difficult to envision a more blatant violation of an individual's right to due process than that which occurred here.

The People have not cited, nor has our research located, any case that suggests a commitment hearing may proceed in the absence of the proposed conservatee where the proposed conservatee does not waive that right, either directly to the trial court or through counsel after counsel has discussed the issue with his or her client. Instead, the People rely on a line of cases that hold that an attorney may waive the right to a jury trial, even over the

objections of the client. (*People v. Otis* (1999) 70 Cal.App.4th 1174, 1177 [83 Cal.Rptr.2d 326] [mentally disordered offender (Pen. Code, § 2960 et seq.)]; *Mary K., supra*, 234 Cal.App.3d at p. 271 [Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5350 et seq.)]; *People v. Masterson* (1994) 8 Cal.4th 965, 974 [35 Cal.Rptr.2d 679, 884 P.2d 136] [competency to stand trial (Pen. Code, § 1368 et seq.)].)[2] But because an attorney may waive his or her client's right to a jury trial, it does not necessarily follow that an attorney may waive all of a client's rights. Indeed, such a claim flies in the face of an attorney's duties and obligations to his or her client.

■ "The role of an attorney in litigation is to '[protect] the client's rights and [achieve] the client's fundamental goals.' [Citation.] In carrying out this duty, the attorney has the general authority to stipulate to procedural matters that may ' "be necessary or expedient for the advancement of [the] client's interest[s]." ' [Citation.] However, the attorney may not, without the consent of his or her client, enter into an agreement that 'impair[s] the client's substantial rights or the cause of action itself.' [Citation.]" (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612–613 [43 Cal.Rptr.3d 427] (*Christopher A.*).)

In *Christopher A.* the proposed conservatee's counsel stipulated to a judgment establishing a conservatorship for Christopher pursuant to the LPS Act. The record did not suggest that Christopher had consented to the terms of the proposed judgment. The appellate court applied the above principles to conclude this procedure was constitutionally infirm. "To allow the conservatee's attorney to waive the right to a hearing and agree to the extent of the deprivation without the express consent of the conservatee is contrary to the principles of procedural due process. A waiver of the right to a hearing on these issues eliminates a procedural safeguard already in place. Therefore, we conclude that before accepting a stipulated judgment on placement, disabilities, and conservator powers, the court on the record must consult with the conservatee to instruct him or her on the consequences of the stipulation and obtain the conservatee's express consent to the stipulation on those issues." (*Christopher A., supra*, 139 Cal.App.4th at p. 613.)

■ We readily conclude that a stipulation to proceed in the absence of the proposed conservatee substantially impairs the right of that individual. As noted in *Watson*, the conduct of the allegedly mentally retarded person is

---

[2] We did not locate a case holding that an attorney may waive the potential committee's right to a jury trial over the potential committee's objection in a section 6500 proceeding. Two cases, *People v. Bailie* (2006) 144 Cal.App.4th 841, 844 [50 Cal.Rptr.3d 761] and *People v. Alvas* (1990) 221 Cal.App.3d 1459, 1465 [271 Cal.Rptr. 131], held that a potential committee in a section 6500 proceeding must be advised of the right to a jury trial on the record. The Supreme Court has accepted this issue for review in *People v. Barrett* (2009) 181 Cal.App.4th 196 [104 Cal.Rptr.3d 62], review granted April 14, 2010, S180612.

likely to affect the reliability of the proceeding, and the absence of the proposed conservatee suggests the outcome of the proceeding is predetermined before any evidence has been presented. (*Watson, supra*, 91 Cal.App.3d at pp. 461–462.) To permit an attorney to waive his or her client's presence at the trial without the client's permission is error.

The People also argue that even if the trial court erred, reversal is not required because the error was harmless beyond a reasonable doubt. (*Fisher, supra*, 172 Cal.App.4th at p. 1014.) In *Fisher*, testimony from the People's expert was taken on the first day of trial when Fisher was absent. The appellate court concluded the error was harmless beyond a reasonable doubt because counsel was present at the hearing and thoroughly cross-examined the witness. Fisher was present at the resumed hearing and testified on his own behalf. Fisher was given a full and fair opportunity to rebut the People's expert, but his testimony served to confirm the expert's testimony. Under those circumstances, Fisher's absence for the expert's testimony was harmless.

We are faced with dramatically different circumstances in this case. Wilkinson was not at any of the hearings in this matter. Indeed, her appointed counsel only belatedly consulted with her at all. And while grandmother's counsel conceded that Wilkinson was mentally retarded within the meaning of section 6500, there was considerable dispute about the best placement for Wilkinson.

Grandmother's counsel raised questions about the treatment Wilkinson was receiving at the institution in which she was placed and about the unreasonableness of some of the guidelines that institution had imposed before it would conclude Wilkinson was making progress. Grandmother's counsel also argued that placing Wilkinson with grandmother while providing services would be a more appropriate placement for Wilkinson.

Since the People argued that Wilkinson's behavior was a major obstacle to reunification with grandmother, it is reasonable to presume that, had Wilkinson attended the hearing and been given the opportunity to testify, the trial court may have reached a different conclusion about the appropriate placement for Wilkinson. In Wilkinson's absence, the trial court was forced to rely on the reports and grandmother's testimony, which justifiably could have been viewed with some skepticism.

Under these circumstances, we are not confident that the trial court would have reached the same conclusion had Wilkinson been present. It is possible, perhaps even probable, that the result would not have changed had Wilkinson been present for the hearing. But a mere possibility will not permit us to

affirm the order. Accordingly, the error was not harmless beyond a reasonable doubt and the judgment must be reversed.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order appealed from is reversed and remanded to the trial court for further proceedings.

Dawson, J., and Hill, J., concurred.

---

*See footnote, *ante*, page 543.