[No. D057874. Fourth Dist., Div. One. Jan. 20, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
BRANDON HARTSHORN, Defendant and Appellant.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Teresa Gayle Mann Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**O'ROURKE, J.**—Defendant Brandon Hartshorn appeals from an order granting a petition to extend his commitment pursuant to Welfare and Institutions Code section 6500, following a jury finding he is a "mentally retarded person, is a danger to himself or others, and has serious difficulty controlling his dangerous behavior because of his mental retardation . . . ."[1] Raising equal protection grounds, Hartshorn contends the trial court prejudicially erred by failing to instruct the jury that he posed a substantial risk of serious *physical* harm to himself or others to support a true finding under section 6500.

The People argue Hartshorn's equal protection claims are forfeited and will be moot by the time we consider this appeal. They otherwise concede Hartshorn's claim of instructional error, accepting the proposition that section 6500's requirement that the person be a "danger to himself or herself, or others" means the trial court should have instructed the jury he had "the potential for infliction of substantial physical harm upon the respondent himself or upon others." We agree Hartshorn forfeited his equal protection claim. While technically his remaining claims of instructional error are moot

---

[1] The term "mentally retarded person" is used in Welfare and Institutions Code section 6500, which is the statute providing the grounds for Hartshorn's commitment. We use that term because the Legislature has not sought fit to amend the statute using different terminology. Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

and the appeal is dismissed on that ground, we shall nevertheless hold that a finding a person is a danger to himself or others as a basis for involuntary civil commitment under section 6500 requires that the danger involve the potential for substantial physical harm, and the trial court should have instructed the jury accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2009, the San Bernardino County District Attorney filed a petition to commit Hartshorn as a mentally retarded person under section 6500. The petition alleged Hartshorn was a danger to himself and others as defined by that statute.

The matter proceeded to a jury trial, which took place in June 2010. The People presented Annabel Lee Fields, a staff psychologist at the Porterville Developmental Center (Porterville), who testified Hartshorn had received a score of 63 on an IQ test, falling in the mild range of retardation. Fields recounted that Hartshorn became a ward of the state at age 10 and had exhibited instances of sexually inappropriate behavior at each of his placements, including an instance where he orally copulated a 14-year-old son of a foster parent. She testified Hartshorn had deficits in the area of social and interpersonal skills, where he exhibited problems in masturbating in public settings or exposing himself, and staring at Porterville female staff members while masturbating. She stated there were two incidents in January and May 2009 in which Hartshorn became angry, hit and kicked walls and furniture or threw keys at a staff member, so that staff placed him in physical restraints to calm him down so he would not continue to engage in the behaviors and harm himself. Dr. Fields testified Hartshorn had engaged in approximately 25 to 40 instances of exposure or masturbation in public. She diagnosed him with paraphilia "NOS" (not otherwise specified) based on his behaviors with female staff members, and depressive disorder NOS.

Dr. Fields testified she had concluded Hartshorn was a danger to himself or others based on her concern that if Hartshorn were to continue to engage in his masturbatory behaviors in the community, he would be arrested and jailed. Though she had never seen him physically injured, she stated Hartshorn was assaulted by three peers in 2006.

Other witnesses recounted Hartshorn's behavior in masturbating and then getting angry upon being counseled concerning his inappropriate behavior: yelling, hitting walls or punching the chair or couch in which he was seated.

On one occasion Hartshorn threw a small bathroom trash can across the room. At times when confronted with the impropriety of his behavior, Hartshorn called staff members a "bitch" or "slut," or accused them of lying.

In June and July 2009, Hartshorn was caught engaged in orally copulating other patients. Both times after being separated and advised to act appropriately, Hartshorn remained calm or did not acknowledge anything had happened.

Gerardo Casteneda, a case manager at the Inland Regional Center, testified he believed Hartshorn had serious difficulty controlling dangerous behavior in that he could not control his sexual behavior and aggressive behavior. He opined Hartshorn's inappropriate masturbation in public areas would cause danger to himself if placed outside Porterville, noting Hartshorn had been burned on the neck with a cigarette by three peers after he had masturbated in front of a particular staff member. According to Casteneda, Hartshorn failed to appreciate the consequences of his behavior and was "bound to get in trouble" outside in the community with someone who did not like his actions. Casteneda believed there was a clear danger someone could hurt Hartshorn physically for his masturbation in public.

The court instructed the jury in part as follows: "The petition alleges that respondent, Brandon Hartshorn: 1) is mentally retarded. Mentally retarded means that significant subaverage intellectual functioning [*sic*]; an IQ of approximately 70 or below. Concurrent deficits or impairments or significant adaptive functioning and the onset before the age of 18.

"2) Is dangerous to himself or others. Dangerous to himself or others means there is potential for Respondent to cause infliction or substantial harm [*sic*] to himself or others.

"And 3) Has serious difficulty controlling his dangerous behavior because of mental retardation. Serious difficulty controlling his dangerous behavior because of his mental retardation means his mental retardation is a substantial factor in causing him serious difficulty in controlling his dangerous behavior."

During deliberations, the jury submitted a question asking for the "legal definition of potential substantial harm in simple English." The court invited comments and Hartshorn's counsel, citing *People v. Alvas* (1990) 221 Cal.App.3d 1459 [271 Cal.Rptr. 131] (*Alvas*), argued section 6500's language was elusory and vague, rendering it unconstitutional.[2] The prosecutor argued

[2] Counsel stated: "Originally the [*Alvas*] Court said it should be the same standard as [section] 5300 in LPS [(the Lanterman-Petris-Short Act; § 5000 et seq.)]. Which is a demonstrated danger of inflicting substantial physical harm upon self or others. And then the Court in [*Alvas*] presents that standard from LPS as the person . . . . Then [*sic*] say in their

the definition of "substantial harm" was that of its ordinary everyday meaning. The court elected to advise the jury to reread CALCRIM former No. 101, which stated in part that words and phrases not specifically defined in the instructions "are to be applied using ordinary everyday meanings."

The jury reached a true finding on the petition: that Hartshorn is a "mentally retarded person, is a danger to himself or others, and has serious difficulty controlling his dangerous behavior because of his mental retardation . . . ." Based on that finding, and after a placement hearing, the trial court ordered Hartshorn placed with the State Department of Developmental Services and admitted to Porterville for a period of one year.

## DISCUSSION

Hartshorn contends the trial court prejudicially erred when it declined to instruct the jury what sort of potential harm or danger was necessary to support a true finding under section 6500. Pointing to the commitment requirements of the Sexually Violent Predators Act (SVPA), the mentally disordered offender (MDO) law, and the not guilty by reason of insanity (NGI) scheme, he argues only the potential for substantial *physical* harm—not mere emotional harm or the harm that might result from being subjected to the criminal justice system—will justify an involuntary civil commitment. According to Hartshorn, the equal protection clauses in the federal and state Constitutions require that he be treated similarly to persons subject to commitment under these other schemes. He asks that we reverse the true finding and remand the matter for "appropriate proceedings."

Though the People raise both forfeiture and mootness, they concede Hartshorn's claim of instructional error based on *Alvas, supra,* 221 Cal.App.3d 1459. In *Alvas,* the court observed: "Section 5300 of the LPS Act equates 'danger' to the potential for 'infliction of substantial *physical* harm.' (See

language in section 5300, equates danger to the potential for infliction of substantial physical harm. And then they go on to then say, So it should be construed to mean potential for infliction of substantial harm upon the defendant himself or upon others. [¶] So first of all they take the LPS standard and they add potential for infliction as opposed to demonstrated danger. And then potential versus demonstrated danger. Then they take the language and infliction of substantial physical harm and take away the physical and make infliction of substantial harm. So ultimately when you have potential for infliction of substantial harm, it is essentially elusory and it is not—I believe it's so vague and ambiguous that it is not constitutional. The same challenge that was originally addressed in [*Alvas*] but the case is decided on another ground. And this question points out the fact that this is constitutionally to [*sic*] vague and does not hold up as a dangerousness standard for civil commitment."

[§ 5300,] subds. (a), (b), and (c).) Given the similarity of purpose behind the LPS Act and section 6500 proceedings, there is simply no reason to ascribe different meanings to the same term. Therefore we conclude insofar as 'dangerousness' is not defined in section 6500, it should be construed to mean the potential for infliction of substantial harm upon the defendant himself or upon others." (*Alvas*, at p. 1467, italics added.) The People state that because the Legislature appears to have intended to ascribe this particular meaning to "danger" in section 6500, the trial court improperly instructed the jury.

## I. *The Appeal Is Technically Moot*

Because Hartshorn's commitment expired on June 21, 2011, this appeal is technically moot and on that ground is dismissed. (*People v. Sweeney* (2009) 175 Cal.App.4th 210, 214 [95 Cal.Rptr.3d 557].) However, because the issues are of continuing public importance, and a section 6500 order will typically expire before an appeal can be heard, we exercise our discretion to address those claims that have been properly preserved by Hartshorn for review. (Accord, *People v. Wilkinson* (2010) 185 Cal.App.4th 543, 547 [110 Cal.Rptr.3d 776]; *Money v. Krall* (1982) 128 Cal.App.3d 378, 392 [180 Cal.Rptr. 376].)

## II. *The Equal Protection Claim Is Forfeited*

Preliminarily, we are compelled to conclude that Hartshorn forfeited his equal protection argument by failing to raise or develop it below. (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [113 Cal.Rptr.3d 190, 235 P.3d 873]; *People v. Burgener* (2003) 29 Cal.4th 833, 861, fn. 3 [129 Cal.Rptr.2d 747, 62 P.3d 1].) Though Hartshorn's counsel proposed various definitions of "dangerousness" pretrial, as well as in the jury instruction conference, at no time did counsel mention an equal protection violation, nor did counsel make any equal protection arguments after the jurors submitted their question concerning the meaning of potential substantial harm. In these discussions, Hartshorn's counsel pointed out that the *Alvas* court compared the standards to those in the LPS (Lanterman-Petris-Short) Act. However, *Alvas* reached its conclusions when faced with an argument that section 6500 was void as unconstitutionally vague. (*Alvas, supra,* 221 Cal.App.3d at pp. 1466–1467.) Thus, counsel's arguments in this case did not suggest she sought a ruling on equal protection grounds.

Though we have discretion to address the question in any event (see *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323 [98 Cal.Rptr.3d 477]), we

need not, because as we explain below we conclude on due process grounds the term "danger to himself or herself, or others" within section 6500 should be construed to mean the People must prove the defendant's conduct presents a likelihood of serious physical injury to himself or others.

> III. *Due Process Requires Section 6500's Phrase "Danger to Himself . . . or Others" Be Construed as Necessitating Conduct Presenting the Likelihood of Serious Physical Injury*

Section 6500, providing for involuntary civil commitments for mentally retarded persons,[3] provides in part: "[N]o mentally retarded person may be committed to the State Department of Developmental Services pursuant to this article, unless he or she is a danger to himself or herself, or others. . . . [¶] . . . [¶] Any order of commitment made pursuant to this article shall expire automatically one year after the order of commitment is made." The statute provides that "dangerousness to self or others" includes incompetence to stand trial when a defendant has been charged with specified violent crimes, and also includes being charged with a felony involving death, great bodily injury, or an act that poses a serious threat of bodily harm to another person. (§ 6500.) Section 6500, however, does not define the term "danger to himself or herself, or others" for those defendants who are not both incompetent and charged with one of the designated offenses. (See *Alvas, supra,* 221 Cal.App.3d at pp. 1466–1467.)

 In *Money v. Krall, supra,* 128 Cal.App.3d 378 the Fifth District Court of Appeal addressed a claim that section 6500 was unconstitutionally vague for failing to define the term "mentally retarded" persons. (128 Cal.App.3d at p. 380.) It summarized the standards applicable to such a claim: " 'Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies.' [Citation.] However, ' "Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources

---

[3] "While a section 6500 commitment results in a substantial loss of liberty, it is a civil proceeding, not a criminal proceeding, because the goal of the proceeding is the treatment of the potential committee, not punishment." (*People v. Wilkinson, supra,* 185 Cal.App.4th at p. 547.)

[citation].' [Citation.] Moreover, courts have a duty to ' "construe enactments to give specific content to terms that might otherwise be unconstitutionally vague.' " [Citation.] 'If feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality.' " (*Id.* at p. 394.)

The California Supreme Court has reaffirmed that courts will "construe statutes when reasonable to avoid difficult constitutional issues," including possible due process violations. (*People v. McKee* (2010) 47 Cal.4th 1172, 1193 [104 Cal.Rptr.3d 427, 223 P.3d 566], citing *In re Smith* (2008) 42 Cal.4th 1251, 1269 [73 Cal.Rptr.3d 469, 178 P.3d 446]; see also *People v. Lowery* (2011) 52 Cal.4th 419, 427 [128 Cal.Rptr.3d 648, 257 P.3d 72] ["Insofar as practicable, this court will construe a statute so as to ' "render it valid . . . or free from doubt as to its constitutionality . . . ." ' "].) This court recognizes the same principle. (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 530, fn. 8 [128 Cal.Rptr.3d 869]; *de Leon v. Jenkins* (2006) 143 Cal.App.4th 118, 128 [49 Cal.Rptr.3d 145].)

■ Civil commitment for any purpose constitutes a significant deprivation of liberty requiring due process protection. (*Foucha v. Louisiana* (1992) 504 U.S. 71, 80 [118 L.Ed.2d 437, 112 S.Ct. 1780].) "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (*Ibid.*) The substantive component of the due process clause bars such arbitrary action " ' "regardless of the fairness of the procedures used to implement them." ' " (*Foucha*, at p. 80; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826] ["Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation."]; *Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 93 [133 Cal.Rptr.3d 155] ["Substantive due process protects against 'arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards.' "].)

■ With these principles in mind, we conclude courts should give the subject phrase—"danger to himself . . . or others"—a reasonable and practical construction so as to avoid arbitrary or speculative application of section 6500's commitment scheme for mentally retarded persons who are not both incompetent and charged with one of the enumerated offenses. Like the *Alvas* court (*Alvas, supra*, 221 Cal.App.3d at p. 1467), we hold at a minimum, the

"danger" referenced in section 6500 must involve conduct that presents the likelihood of serious physical injury. The vagaries of emotional injury, mere apprehension of physical injury, speculation and conjecture are not enough to justify the need for commitment. In our view, any other conclusion would permit involuntary civil commitments under section 6500 in violation of a person's fundamental due process rights.[4]

■ "The rules governing a trial court's obligation to give jury instructions without request by either party are well established. 'Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' " (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97].) The court in this case was required to instruct the jury that to establish a person is a danger to himself or others and thus be subject to commitment under section 6500, the People's burden was to show the person's conduct presents a likelihood of serious physical injury to himself or others. The jury was then to determine if Hartshorn met that criteria. (*People v. Sweeney, supra,* 175 Cal.App.4th at p. 218.)

Because Hartshorn's appeal is technically moot, we need not address whether the trial court's error in failing to so instruct the jury was harmless. (*People v. Sweeney, supra,* 175 Cal.App.4th at p. 225.)

---

[4] In the state of Oregon, a person may be involuntarily committed if he or she is found to be " 'mentally ill,' " which is defined by statute as having a " 'mental disorder' and, as a result of that disorder, 'is . . . [d]angerous to self . . . .' " (*State v. B.B.* (2010) 240 Ore.App. 75 [245 P.3d 697, 701], citing Or. Rev. Stat. §§ 426.130(1)(b)(C), 426.005(1)(e)(A).) In Oregon, case law has developed so that "[t]o establish that a person is '[d]angerous to self,' the state must present evidence that the person's 'mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to himself or herself in the near term.' " (*State v. B.B.,* 245 P.3d at p. 701, quoting *State v. Olsen* (2006) 208 Ore.App. 686 [145 P.3d 350, 352].) Accordingly, Oregon courts have held that odd, delusional or bizarre behavior, or use of poor judgment, without evidence of a potential for serious physical harm, is not sufficient for civil commitment. (*State v. D.J.* (2006) 206 Ore.App. 146 [135 P.3d 397, 401], citing *State v. J.W.H.* (2005) 202 Ore.App. 661 [123 P.3d 370] [swimming nude in 40-degree weather was not evidence of dangerousness to self where there was no evidence the appellant suffered any harm as a result] and *State v. T.S.W.* (2003) 186 Ore.App. 404 [63 P.3d 1258, 1261] [concerns that appellant would be assaulted while riding her bicycle nude in unsafe neighborhoods did not justify commitment because she had engaged in the same behavior repeatedly and had never been assaulted]; see also *State v. B.B.,* 245 P.3d at pp. 701–702.) "Such restraint comports with the fundamental principle that the power to civilly commit a person must not be used 'as a "paternalistic vehicle" to "save people from themselves." ' " (*State v. B.B.,* at p. 702.)

## DISPOSITION

The appeal is dismissed.

McIntyre, Acting P. J., and Irion, J., concurred.