Filed 6/10/13  P. v. Fisher CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B241270 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA364477) |
| v. | |
| AJANI S. FISHER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jose I. Sandoval, Judge.  Affirmed.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, and Tita Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Ajani Salim Fisher was charged by information with one count of murder (Pen. Code, § 187, subd. (a)),[1] with special allegations that his victim was over 60 years old (§ 1203.09, subd. (f)). The jury acquitted defendant of murder, but convicted him of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)) and found the special allegation to be true. At sentencing, the trial court denied probation and sentenced defendant to the high term of 11 years in state prison. On appeal, defendant contends the trial court abused its discretion when it imposed the high term, reasoning that mitigating factors outweighed the factors in aggravation. He also contends the error amounts to a violation of his federal due process rights. Respondent maintains any error was waived when defendant failed to object at the sentencing hearing. We do not find waiver, but we conclude the trial court did not abuse its discretion. We also reject defendant's attempt to cast his claim of sentencing error as a federal due process claim.

## BACKGROUND

On November 9, 2009, defendant's wife, Taneshia Turner, and two children were at the Saki Liquor store on West Jefferson Boulevard in Los Angeles. Turner often frequented the store, staying for 30 or 40 minutes at a time to play the scratch lottery. The store was equipped with cameras, and a video of that day's events, along with a transcription, were shown to the jury. Store clerk, Yongwon Lee, asked Turner why she had been in the store for so long. Turner responded, "Excuse me. Don't f------ talk to me like that. Do you understand? I'll stand here as long as I'm buying s---." Lee said, "Watch your f------ mouth, you lady, okay?" Turner told Lee to "watch [his] mouth." She asked for the store manager, Connie Chang, who was away but returned to the store later that day. Turner then asked Lee for his name. Lee told Turner to leave, and Turner told him she would not leave, and he could call the police. The two continued to argue, culminating in Lee again telling Turner to leave, that she was a "b----," and to "suck [his] d----." Turner eventually left.

---

[1] All further undesignated statutory references are to the Penal Code.

2

According to Turner, she was upset and crying after her encounter with Lee, and told defendant what Lee had said to her. A short time after her argument with Lee, she returned to the liquor store to speak with the store manager, and brought defendant along for support. The video and transcript showed that they spoke with the store manager, Chang, and complained about how Lee had treated Turner. Lee joined in the conversation, arguing that Turner's children were "hanging around, playing around" the store. Defendant told Chang, "I'm pissed off[.] I would never call you [a] b----. I would never tell you something like that. This is what this man is telling my wife – [¶] . . . [¶] – in front of my children." Lee responded, "Okay. I'm sorry. I apologizing." However, Lee added that Turner was also responsible for their argument. Defendant retorted that "[m]y wife never cursed you. [¶] . . . [¶] [Y]ou called her a b----." Lee said, "We don't want to argue with you in the store." Lee suggested that "we talk man to man okay. Would you come on out, please?"

Turner continued talking with Chang and another store employee while defendant and the victim went outside. According to Chang, defendant soon came back into the store, pulled Turner's arm, and told her, "Let's go, let's go." He was in a hurry, and the two quickly left. Chang ran outside and saw Lee lying in the street, bleeding. She also saw defendant and Turner fleeing in a car.

Several witnesses outside the store saw defendant beating Lee. Bobby Johnson was a passenger in his mother's car. He saw defendant on top of another man, beating him with this fists and his elbow. Johnson saw the dentures fly out of Lee's mouth. He saw defendant go inside the liquor store after the beating.

Veronica Lopez was outside her place of employment, across the street from the liquor store, when she saw two men leaving the liquor store. She did not hear them say anything before defendant started punching Lee in the face. Lee covered his face with his hands. Defendant hit Lee 10 or 12 times while Lee was still standing. Lee fell to the ground, still covering his face with his hands. Defendant held Lee down with his left hand and continued hitting Lee with his right hand, striking him six or eight times. Lopez heard a sound like Lee's head hitting the pavement. She screamed for defendant to stop

3

hitting Lee, and threatened to call police. Defendant did not react. A few moments later, defendant stopped hitting Lee and went into the liquor store. He emerged with a woman, and the two quickly walked away.

Gwendolyn Creighton saw one man hitting the other. One of the men was knocked to the ground, and the other crouched over him, using his elbow to slam the other man's head into the pavement, more than once. She called 911, reporting that she saw a black man beating an Asian man, and "bouncing" his head off the sidewalk.

Detective Robert Lait responded to the crime scene. Based on information obtained from store employees and store surveillance videos, Detective Lait contacted Turner. Turner told him she was at the store with her husband that day, but would not provide her husband's name. However, officers were able to determine defendant's identity, and arrested him. Defendant did not have any significant injuries; just some redness on his left elbow and a small scrape on his left knee.

Paramedics transported Lee to the emergency room. He was pronounced dead later that evening. He suffered from a broken neck, a skull fracture, a fractured cheek bone, hemorrhaging, and a subdural hematoma. The cause of death was a fatal beating to the head with a blunt object.

At the time of the incident, defendant was 33 years old, 5 feet 10 inches tall, and weighed 215 pounds. Lee was 62 years old, 5 feet 7 inches tall, and 170 pounds.

Defendant testified he was upset on the day of the incident, because he was finalizing a divorce from Turner. He wanted to try and make the marriage work. He accompanied Turner to the liquor store to talk to the store manager about Lee's conduct. As they were talking to the manager, Lee suggested that he and defendant talk outside, man to man. Lee walked out of the store, and beckoned defendant to join him. Defendant eventually walked outside, and the two started arguing. Lee then "swung and hit" defendant. Defendant punched Lee in the head, Lee grabbed defendant, and the two wrestled. Defendant was on top of Lee and struck him in the head with his forearm. Defendant hit Lee three or four times while he was on the ground. Defendant admitted he hit Lee hard enough to kill him.

4

Turner testified that Lee and defendant had been outside for five to seven minutes before defendant returned to the store, looking "kind of scared and in a hurry." He told Turner, "Let's go." As they were leaving, Turner saw Lee lying on the ground. She asked defendant to drive her to her mother's house. They did not discuss what happened, but Turner knew something bad had happened and was scared. Detective Lait testified that Turner told him that as she and defendant drove away, defendant told Turner she was "better off not knowing [what happened] . . . . If you don't know nothing, you can't say nothing."

Several witnesses testified to defendant's good character. Turner did not consider defendant to be a violent man. He never hit Turner or used corporal punishment on their children. Defendant's cousin, Carl Calhoun; his uncle, Reverend Reginald Calhoun; and defendant's mother, Sylvia Fritz-Fisher, all testified that defendant is an honest, nonviolent man.

The jury acquitted defendant of murder, but found him guilty of voluntary manslaughter. The People and defendant filed sentencing memoranda with the court. The People recommended the maximum period of confinement, contending the vicious nature of the beating on a vulnerable victim justified imposition of the high term.

Defendant's memorandum included numerous certificates of completion of jail programs, such as anger management, as well as letters from family and friends. The memorandum urged there were many factors in mitigation, such as the victim was the provoker (Cal. Rules of Court, rule 4.423(a)(2)); the crime was committed because of an unusual circumstance, such as great provocation, and is unlikely to recur (Cal. Rules of Court, rule 4.423(a)(3)); defendant had no prior criminal record (Cal. Rules of Court, rule 4.423(b)(1)); and defendant agreed to pay restitution to the victim's family (Cal. Rules of Court, rule 4.423(b)(5)). The memorandum also contended defendant was remorseful, accepted blame, had a continuous work history, has community and family ties, had no history of violence, and had exemplary behavior in jail.

At the sentencing hearing, several witnesses, including defendant's cousin, mother, and former mother-in-law, Antoinette Porter, testified that defendant was a good

person, a good father, and was not violent. Defendant also testified. He apologized to Lee and Lee's family, and said that he was remorseful. On cross-examination, defendant admitted he did not call an ambulance after beating Lee, and that his first call after the fight was to his own attorney.

Defense counsel requested the low term. The prosecutor contended the high term was justified by the viciousness of the crime and that defendant only looked out for his own interests when he left the scene of the crime and called his attorney.

The trial court observed that the video surveillance in the liquor store recorded defendant coming in after the fight, looking calm, and then leaving with Turner. The court also noted that witnesses testified "to the particularly violent nature of the beating. At least one witness talked about Mr. Lee's head bouncing on the sidewalk or pavement." The court found the particular nature of the crime may be considered as an aggravating factor. "And I'll note that the victim was vulnerable. The physical distinction between Mr. Fisher, his size, and the victim himself was made plain to the jury and is evident in the exhibits admitted into evidence." The court then sentenced defendant to the high term of 11 years. The court acknowledged there were circumstances in mitigation, but found the "brutal beating" justified imposition of the high term. Defendant did not object after the trial court stated its reasons, and the sentence was pronounced.

Defendant timely appealed.

### DISCUSSION

Defendant contends the trial court abused its discretion when it imposed the high term of 11 years in state prison, reasoning the factors in mitigation outweighed the aggravating factors. Respondent contends any claimed error has been waived because defendant made no objection to the court's imposition of the high term or the stated reasons for the sentence. (See *People v. Scott* (1994) 9 Cal.4th 331, 354, 356 (*Scott*) ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) Defendant contends he did object to the sentence by arguing at the hearing and stating in his sentencing memorandum that a low-term sentence was appropriate.

6

We agree that defendant's arguments in his memorandum and at the hearing are tantamount to an objection to the trial court's weighing the factors in support of the high term. On this record, an additional objection after imposition of the high term would have been redundant. The purpose of requiring an objection to preserve a claim is to promptly prevent and correct errors by calling the court's attention to them. (*Scott*, *supra*, 9 Cal.4th at p. 353.) Defendant's arguments in his memorandum and at the hearing were sufficient to meet this objective.

Nevertheless, we find the trial court did not abuse its discretion. Whether to impose the upper term is a decision resting in the trial court's sound discretion. (§ 1170, subd. (b).) In determining the appropriate term, the court may consider the record in the case, the probation report, evidence introduced at the sentencing hearing, and "any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).) The court "shall select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).)

A trial court may base an upper term sentence upon any aggravating circumstance the court deems significant, subject to specific prohibitions not at issue here. The court's discretion to identify aggravating circumstances is limited only by the requirement they be reasonably related to the decision being made. (*People v. Sandoval* (2007) 41 Cal.4th 825, 848 (*Sandoval*).) The trial court "shall state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c); see also *Sandoval*, at pp. 846-847; Cal. Rules of Court, rule 4.420(e).) However, the court is not required "to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances," nor must it provide a " 'concise statement of the ultimate facts that the court deemed to constitute circumstances in aggravation or mitigation.' [Citations.]" (*Sandoval*, at p. 847.)

A trial court's sentencing decision will not be disturbed on appeal unless it is so irrational or arbitrary that no reasonable person could agree with it. (*People v. Jones* (2009) 178 Cal.App.4th 853, 860; *People v. Carmony* (2004) 33 Cal.4th 367, 377; see also *Sandoval*, *supra*, 41 Cal.4th at p. 847.) A court abuses its discretion if it fails to

7

exercise its discretion in sentencing, relies upon irrelevant circumstances, or relies upon circumstances that constitute an improper basis for the decision. (*Sandoval*, at pp. 847-848.) The burden is on the party attacking the sentence to show the sentencing decision was irrational or arbitrary, and an appellate court will not substitute its judgment for that of the trial court. (*People v. Jones*, at p. 861.) "Even if a trial court has stated both proper and improper reasons for a sentence choice, 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper. [Citation.]' " (*Ibid.*)

Here, the court found as factors in aggravation that the crime involved great violence (Cal. Rules of Court, rule 4.421(a)(1)), and the victim was particularly vulnerable due to the size disparity between Lee and defendant (Cal. Rules of Court, rule 4.421(a)(3)). The existence of only one aggravating factor is sufficient to support imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813.) The court acknowledged there were factors in mitigation, such as defendant not having a criminal record (Cal. Rules of Court, rule 4.423(b)(1)), but found that the extreme violence of the crime and physical advantage that defendant had over Lee outweighed the factors in mitigation. The trial court was well within its discretion to impose the high term. Defendant's callous disregard for Lee's safety, and preoccupation with his own (venting his marital frustration on an old man, fleeing the scene, and calling a lawyer rather than an ambulance for help) support imposition of the high term. Defendant is asking this court to substitute its judgment for the trial court's, which we cannot do. (*People v. Jones*, *supra*, 178 Cal.App.4th at p. 861.)

Because the trial court did not act in an arbitrary fashion, and properly exercised its discretion when it imposed the upper term, defendant's due process claim is without merit. (See *People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1153 [due process protects against arbitrary government action].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.