Filed 7/29/21  P. v. Bahena CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OSCAR BAHENA,<br><br>    Defendant and Appellant. | B307080<br><br>(Los Angeles County<br>Super. Ct. No. ZM027976) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Streimer, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A Taryle and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Oscar Bahena appeals the trial court's order under Welfare and Institutions Code[1] section 6500 committing him to residential placement under the authority of the State Department of Developmental Services. Bahena does not challenge the court's finding that he poses a danger to others. Instead, he contends that there was no evidence that his developmental disability was a substantial factor in causing his dangerousness, as is required for commitment under section 6500. We disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

Bahena, who is 31 years old, has a lengthy history dating back to at least 2004 of voluntary and involuntary psychiatric commitments, as well as maladaptive behaviors resulting in arrests. He has been diagnosed with both a developmental disability and schizophrenia, but he is not currently the subject of a conservatorship. In 2013, Bahena was charged with battery with serious bodily injury (Pen. Code, § 243, subd. (d)), after allegedly punching a nurse at the medical center where he was an inpatient. The court found him incompetent to stand trial and committed him to Patton State Hospital pursuant to Penal Code section 1370.1.

After a psychiatrist filed a report indicating that Bahena was unlikely to become competent to stand trial for the foreseeable future, the People on September 24, 2015 filed a petition under section 6500 to commit Bahena to the State Department of Developmental Services on the ground that he

---

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

was a danger to himself or others as a result of his developmental disability.  The court granted the petition and ordered Bahena to be committed to the State Department of Developmental Services for one year.  Under section 6500, a commitment expires automatically after one year, though a commitment can be extended in one-year increments via subsequent petitions. (§ 6500, subd. (c)(1).)  Subsequent petitions to extend Bahena's commitment were filed on November 18, 2016, January 19, 2018, and May 22, 2019, all of which were granted.

On June 9, 2020, the District Attorney filed a new commitment petition.  Bahena denied the allegations in the petition, but waived his right to a jury trial in favor of a bench trial.

The People's sole witness at the trial was Dr. Dwight Norman, who had served as Bahena's clinical psychologist at Porterville Developmental Center from December 2015 until approximately March 1, 2020, when he became Bahena's forensic assessment psychologist.  Consistent with past diagnoses, Dr. Norman diagnosed Bahena with both mild intellectual disability and schizophrenia.  The diagnosis of mild intellectual disability was based on a finding of "[i]ntellectual and adaptive functioning deficits" that began before adulthood.  Norman based his diagnosis of schizophrenia on his finding that Bahena has three of the five diagnostic symptoms of that condition—namely, hallucinations, disorganized speech, and disorganized behavior.

Dr. Norman testified that, over the course of the previous year, Bahena suffered three psychotic episodes, where he became aggressive towards staff members at Porterville Developmental Center.  Afterwards, however, Bahena frequently did not remember these incidents.  Dr. Norman counseled Bahena after

each episode. The counseling involved "reality therapy and informing [Bahena] of his coping skills to be able to manage" his emotions and actions. According to Dr. Norman, Bahena had shown some improvement in managing his emotions in the past few months.

Bahena is prescribed both anti-depressants and anti-psychotics. Although he is sometimes noncompliant with his medications, he has a general understanding of why he takes medications. Dr. Norman testified that notwithstanding the three incidents, Bahena has been much more stable as of late. These improvements were attributable both to his medication regime and to his improved abilities to cope and manage his emotions. If these improvements continue, Dr. Norman believes that Bahena could reasonably be transferred to a less restrictive, outpatient community placement.

According to Dr. Norman, the dual diagnosis of schizophrenia and developmental disability makes it difficult to isolate precisely what triggers Bahena's aggressive behavior. By Dr. Norman's lights, Bahena's frequent inability to understand the nature and character of his actions is substantially related to his dangerousness towards others. Dr. Norman believes that Bahena lacks in-depth self-understanding and self-awareness. Without these abilities or an adequate way of coping with his developmental disabilities, he is more likely to engage in dangerous behaviors towards others.

Following the testimony of Dr. Norman, the court found that Bahena was a danger to others, and that his developmental disability was a substantial factor in causing that dangerousness. The court ordered Bahena committed for a further period of one year commencing on August 4, 2020.

## DISCUSSION

### A.    *Background on Section 6500*

A person with a developmental disability may be committed to the State Department of Developmental Services for residential placement other than in a state developmental center or state-operated community facility, if the person is found to be a danger to self or others because of the disability.  (§ 6500, subd. (b)(1).)  To qualify as developmentally disabled, a person must have a disability that originates before he or she attains 18 years of age, continues, or can be expected to continue indefinitely, and constitutes a substantial disability for the person.  The term "[d]evelopmental disability" includes, but is not limited to, intellectual disabilities.  (§ 4512, subd. (a).)  To be a danger to self or others, the person must, at minimum, engage in conduct that presents the likelihood of serious physical injury.  (*People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1154 (*Hartshorn*).)  Under section 6500, a commitment expires automatically after one year, though a commitment can be extended in one-year increments via subsequent petitions.  (§ 6500, subds. (b)(1)(A) & (b)(1)(B).)

For a defendant to be committed under section 6500, the People must prove beyond a reasonable doubt that the defendant (1) has a developmental disability, (2) is a danger to self or others, and (3) has serious difficulties controlling his or her dangerous behaviors by virtue of his or her developmental disability.  (*People v. Sweeney* (2009) 175 Cal.App.4th 210, 216.)  Thus, it is not enough to show merely that the defendant is a danger to himself or others.  In addition, the People must show that the defendant's developmental disability—which is,

5

importantly, to be distinguished from a mental illness—is a substantial factor in causing the defendant serious difficulty in controlling his dangerous behavior. (*People v. Cuevas* (2013) 213 Cal.App.4th 94, 106 (*Cuevas*).)

We review the trial court's determination of these factors for substantial evidence. (*Cuevas, supra,* 213 Cal.App.4th at pp. 106–107.) To be substantial, the evidence must be of "ponderable" legal significance—reasonable in nature, credible and of solid value. (*Id.* at p. 107.)

In conducting a substantial evidence review, " 'the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' [Citation.]" (*Cuevas, supra,* 213 Cal.App.4th at pp. 106−107.) "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm v. Primm* (1956) 46 Cal.2d 690, 693, italics omitted.) There is a presumption that the record contains evidence to sustain every finding of fact, and it is the appellant's burden to demonstrate that the record does not sustain every finding. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

### B.     *Substantial Evidence Supports the Trial Court's Finding that Bahena's Developmental Disability was a Substantial Factor in his Dangerousness*

Bahena contends that the trial court erred by finding that his developmental disability was a substantial factor in

his dangerousness. A commitment under section 6500 cannot be grounded solely on speculation. (*Hartshorn, supra*, 202 Cal.App.4th at pp. 1153–1154.) Moreover, commitment under section 6500 requires proof that the defendant's developmental disability is a substantial factor in causing the defendant's difficulty in controlling his dangerous behavior. (*Cuevas, supra*, 213 Cal.App.4th at pp. 106–107.) Bahena argues that Dr. Norman's testimony was based on speculation, and that there is no evidence that his developmental disability is a substantial factor in causing his dangerous behavior. Bahena thus contends that there was insufficient evidence to justify commitment under section 6500. We disagree.

Bahena relies primarily on *Cuevas* in support of his contention that the trial court's finding lacked substantial evidence. In that case, the defendant was diagnosed with both a developmental disability and paranoid psychosis. (*Cuevas, supra,* 213 Cal.App.4th at p. 98.) At trial, the defendant's treating clinical psychologist testified that he would be a risk to himself on account of his continued delusional ideations. (*Id.* at p. 100.) The psychologist was not asked, however, whether the defendant's developmental disability was a substantial factor in his dangerousness. (*Ibid.*) The court held that since (1) nothing in the record directly supported the proposition that there was a causal nexus between the defendant's developmental disability and his dangerousness, and (2) that the evidence in the record strongly supported the proposition that it was the defendant's mental illness that led to his dangerous behavior, there was no substantial evidence to show that his developmental disability was a substantial factor in causing his dangerousness. (*Id.* at p. 107.)

7

In this case, by contrast, Dr. Norman testified directly as to the link between Bahena's disability and his dangerousness, and he provided reasoning to support his claims. Dr. Norman stated that Bahena's frequent inability to understand the nature and character of his emotions and his actions is substantially related to his dangerousness towards others. According to Dr. Norman, Bahena lacks significant insight and understanding of his actions, especially in situations that are high-risk. Without these abilities and without an adequate way of coping with his erratic emotions, he is more likely to engage in aggressive behavior towards others. Moreover, because of Bahena's difficulties with basic tasks such as administering his own medications, there is an added likelihood that he will pose a danger towards others. This testimony was not speculative, but rather was grounded in Dr. Norman's five-year relationship with Bahena as his staff psychologist. Because Dr. Norman's testimony suggests a plausible, empirically informed nexus between the defendant's developmental disability and his dangerousness towards others, there was sufficient evidence to support the trial court's finding.

## DISPOSITION

The trial court's order is affirmed.
<u>NOT TO BE PUBLISHED</u>.


                                    ROTHSCHILD, P. J.
We concur:



CHANEY, J.



CRANDALL, J.*

---

     **\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.